[Civ. No. 62775. Second Dist., Div. One. Aug. 16, 1982.]

DEE LOIS MORRIS, Plaintiff and Appellant, v.
KARL M. FRUDENFELD, Defendant and Respondent.

---

COUNSEL

James H. Davis and Robert A. Wooten, Jr., for Plaintiff and Appellant.

Jerrie S. Weiss and Bonne, Jones, Bridges, Mueller & O'Keefe for Defendant and Respondent.

---

OPINION

COOPERMAN, J.*—Plaintiff appeals from a jury verdict in her favor in a medical malpractice action, awarding her $1,708 in damages.

The complaint in this case was filed on January 21, 1977. The basic allegations thereof charged negligence against defendant Frudenfeld and others in the performance of bilateral tubal ligation upon plaintiff on or about June 27, 1974, for the purpose of sterilization. The complaint further alleges plaintiff became pregnant in early 1976.

The case proceeded to trial on or about July 28, 1980, in the Southwest District of the Superior Court of Los Angeles County. ·

The relevant facts received in evidence were as follows:

Plaintiff consulted defendant on or about June 12, 1974, in his capacity as a specialist in the field of obstetrics and gynecology, with respect to his performing a bilateral tubal ligation for the purpose of sterilizing plaintiff.

Plaintiff was admitted by defendant to Centinela Valley Community Hospital on or about June 27, 1974, for the performance of the surgery requested by plaintiff.

A postoperative pathology report prepared by Thomas J. Bassler, M.D., the hospital pathologist, stated that a specimen submitted as a

---

*Assigned by the Chairperson of the Judicial Council.

section of the left fallopian tube was not so identified upon analysis, indicating an incomplete tubal ligation.

Plaintiff became pregnant in early 1976, her condition having been confirmed by James Frudenfeld, M.D., a nephew of defendant who maintained his own practice, but had offices in the same medical group as defendant.

Defendant did not recall seeing the foregoing pathology report until after plaintiff's pregnancy was confirmed, although James Frudenfeld, M.D., found the report in plaintiff's file when he examined her relative to her suspected pregnancy. Defendant was not able to say when the pathology report was placed in plaintiff's file.

James Frudenfeld, M.D., offered to perform an abortion for plaintiff free of charge, to arrange for adoption of plaintiff's expected child, and/or to perform another tubal ligation, without charge. Plaintiff, after due consideration, chose not to have an abortion, and determined to keep her child, a healthy daughter, who was born in late 1976. Plaintiff declined religation following delivery of her infant.

There was conflict in the expert evidence as to whether or not a duty existed on the part of the surgeon performing the tubal ligation to ascertain the results of the postoperative pathology examination and report. Jacob Y. Turner, M.D., a pathologist who testified as a medical expert on behalf of plaintiff, was of the opinion that defendant had the duty to ascertain the results of Dr. Bassler's pathology report and to inform plaintiff.

Defendant and Dr. James Frudenfeld, testified that a surgeon who performs a bilateral tubal ligation does not have a duty to ascertain the results of a postoperative pathologic examination of tissue, that a pathology report may not be received until after a patient has left the hospital, and that failure to ascertain such pathologic findings in elective surgery, such as is involved in the case at bench, is not malpractice.

Plaintiff offered evidence that as a result of the negligence of defendant in connection with the sterilization surgery, she sustained, and will sustain, in addition to general damages, special damages in the approximate sum of $100,000, representing lost earnings, expenses of confinement, and costs of rearing her daughter until she is of legal age.

The jury, in a *unanimous* verdict, awarded plaintiff the sum of $1,708, representing medical expenses in connection with the delivery of her child.

Plaintiff filed a notice of intention to move for a new trial on the issue of damages on August 14, 1980.

The motion for new trial was argued on September 25, 1980, and denied.

On October 1, 1980, plaintiff filed her notice of appeal from the judgment entered following the jury verdict in her favor.

## ISSUES

Appellant contends the trial court committed reversible error in the following respects:

1. In permitting the receipt in evidence of testimony relative to appellant's refusal to obtain an abortion, or to place her child for adoption, to establish a failure on the part of appellant to mitigate damages.

2. In failing to instruct the jury on the elements of mitigation of damage, after evidence was received and argument made on the issue of mitigation.

3. In failing to instruct the jury that the burden of proof on the issue of offset to, and mitigation of, damages was on respondent.

4. In not permitting counsel for appellant to cross-examine respondent relative to pretrial denials to appellant's requests for admission, which were allegedly inconsistent with respondent's testimony at trial.

Appellant further contends that she is entitled to a new trial for the following reasons:

(a). The damages awarded by the jury were inadequate as a matter of law.

(b). Because of irregularities and/or misconduct on the part of the jury.

## DISCUSSION

The first three of appellant's contentions concern the issue of mitigation of damages.

■ In the first instance, appellant argues that the trial court committed reversible error in allowing in evidence and permitting argument relating to appellant's failure, upon learning of her pregnancy, to abort her child, as offered by Dr. James Frudenfeld, without charge, or to avail herself of the opportunity of placing her daughter for adoption, following her birth.

The clerk's transcript indicates that counsel for appellant submitted a memorandum of points and authorities in support of motion *in limine* for an order ". . . limiting and prohibiting the offering of evidence, argument, or instruction to the effect that plaintiff was under any duty to mitigate her damages by undergoing an abortion or by putting her child up for adoption." Counsel for appellant states that the trial judge made a ruling on the foregoing motion *in limine*, in chambers, but that such ruling ". . . is not reflected by any Minute Order." Neither, in point of fact, is the purported ruling of the court reflected in the reporter's transcript. Appellant asserts, without a record so indicating, that the ruling of the court was to allow evidence and argument on the failure of appellant to abort or allow adoption, but to decline to instruct on the issue, and that such action by the trial court constitutes reversible error.

California law governing actions for the "wrongful birth" of a normal child is sparse. In *Stills* v. *Gratton* (1976) 55 Cal.App.3d 698 [127 Cal.Rptr. 652],[1] plaintiffs (an unmarried mother and her normal and healthy child) sought damages in a medical malpractice action against defendant physicians as a result of the birth of the child following an unsuccessful abortion. The trial court granted nonsuits as against both plaintiffs, and in favor of both defendants.

---

[1] In *Turpin* v. *Sortini* (1982) 31 Cal.3d 220 [182 Cal.Rptr. 337, 643 P.2d 954], an action for "wrongful life," brought by a child born with an hereditary defect, against a medical provider who, prior to the child's conception, negligently failed to warn the child's parents of the possibility of the hereditary condition, the California Supreme Court reviewed *Stills* as one of three California Court of Appeal decisions in the wrongful birth-wrongful life area of the law. (See pp. 226-227.)

The other two cases are *Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884] (action for wrongful birth brought by parents of normal child), and *Curlender* v. *Bio-Science Laboratories* (1980) 106 Cal.App.3d 811 [165 Cal.Rptr. 477] (action for wrongful life brought by child affected with Tay-Sachs disease).

The Court of Appeal affirmed as to the child's cause of action, but reversed as to that of the mother. The court held that the fact that the child was born healthy did not preclude the mother from seeking to recover such damages as are obtainable under ordinary tort principles, subject to offsets for benefits conferred and amounts chargeable to a plaintiff under her duty to mitigate damages. (See *Stills, supra*, 55 Cal.App.3d at p. 709.)

We read *Stills* as holding, implicitly, that in a case of "wrongful birth," such as the case at bench, a mother, married, or unmarried, cannot be required, under the legal doctrine that a plaintiff take reasonable measures to mitigate damages, to undergo an abortion or place her unwanted child for adoption. (See *Stills, supra*, 55 Cal.App.3d at p. 709.)[2]

---

[2]In *Troppi v. Scarf* (1971) 31 Mich.App. 240 [187 N.W.2d 511] which was cited with approval by the court in *Stills, supra*, the Court of Appeals of Michigan, stated as follows, at page 520, in an action by parents who had an unwanted child, against a pharmacist who negligently filled a prescription for birth control pills: "The defendant does not have the right to insist that the victim of his negligence have the emotional and mental makeup of a woman who is willing to abort or place a child for adoption. If the negligence of a tortfeasor results in conception of a child by a woman whose emotional and mental makeup is inconsistent with aborting or placing the child for adoption, then, under the principle that the tortfeasor takes the injured party as he finds him, the tortfeasor cannot complain that the damages that will be assessed against him are greater than those that would be determined if he had negligently caused the conception of a child by a woman who was willing to abort or place the child for adoption.

"While the reasonableness of a plaintiff's effort to mitigate is ordinarily to be decided by the trier of fact, we are persuaded to rule, as a matter of law, that no mother, wed or unwed, can reasonably be required to abort (even if legal) or place her child for adoption. The plaintiffs are entitled to have the jurors instructed that if they find that negligence of defendant was a cause in fact of the plaintiffs' injury, they may not, in computing the amount, if any, of the plaintiffs' damages, take into consideration the fact that the plaintiffs might have aborted the child or placed the child for adoption." (Fn. omitted.)

We also note the enactment of section 43.6 of the Civil Code, effective January 1, 1982, which provides as follows: "(a) No cause of action arises against a parent of a child based upon the claim that the child should not have been conceived or, if conceived, should not have been allowed to have been born alive. [¶] (b) *The failure or refusal of a parent to prevent the live birth of his or her child shall not be a defense in any action against a third party, nor shall the failure or refusal be considered in awarding damages in any such action.* [Italics added.] [¶] (c) As used in this section 'conceived' means the fertilization of a human ovum by a human sperm."

Counsel for appellant conceded at oral argument the inapplicability of Civil Code section 43.6 to the case at bench, by reason of the effective date of the legislation.

In *Turpin v. Sortini, supra*, 31 Cal.3d 220, the Supreme Court stated as follows, with respect to Civil Code section 43.6, at page 229: "Both the legislative counsel's digest accompanying the bill, and the adjacent sections in the Civil Code... suggest that the purpose of the legislation was simply to eliminate any liability or other similar economic pressure which might induce potential parents to abort or decline to conceive a potentially defective child...."

However, given the foregoing state of the law, we cannot assume from the record before us that any ruling was made by the trial judge that was contrary thereto. We are confined in our view to the proceedings which took place in the court below, as presented in the record before us. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 218, p. 4208.) Further, it does not appear that any augmentation of the record presently before the court will result in establishing the existence of the purported order of the trial judge of which appellant complains.

It is also significant to note, as pointed out by respondent, that not only is the record on appeal devoid of any objection on the part of counsel for appellant with respect to specific testimony or evidence relating to appellant's refusal of abortion or adoption, *but evidence thereof was first introduced on direct examination of appellant during her case in chief.* Appellant's counsel again questioned her as to her reason for rejection of abortion and adoption on redirect, following cross-examination on said issues by counsel for respondent.

Thereafter, the general matter of adoption was raised during questioning of respondent on direct examination by his counsel and on the part of the court.

Dr. James Frudenfeld was questioned on direct examination during respondent's case in chief as to his offer to perform an abortion for appellant, free of charge, and as to his discussion with appellant regarding placement of her expected child for adoption. Counsel for appellant cross-examined Dr. Frudenfeld with respect to his offer to perform an abortion for appellant, without charge. Although testimony relative to appellant's rejection of abortion and adoption is objectionable on the issue of mitigation of damages, appellant, having first "opened the door" on this area, is estopped from asserting it as a ground for reversal, under the doctrine of invited error.[3]

▮ Appellant's second and third points, concern the alleged failure of the trial court to instruct the jury properly on the issues of burden of proof and mitigation and offset of damages.

_____

[3](See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 266, p. 4257.) Counsel for appellant argues in the Reply Brief that by reason of the adverse ruling by the court with respect to the *in limine* motion of appellant, *supra*, the objectionable evidence may be utilized *defensively* by appellant, without losing the right to complain of the court's ruling on appeal. As we have already stated, the record on appeal does not support appellant's contention of an adverse ruling by the court on the motion *in limine*.

The clerk's transcript contains the instruction on burden of proof read by the trial judge.[4] This instruction, an adaptation of BAJI No. 2.60, was, according to the legend signed by the trial judge at the top of the instruction, *requested by appellant.*

While the clerk's transcript contains an instruction referred to as "Plaintiff's Requested Instruction, No. —", dated July 31, 1980, which includes a section devoted to defendant's burden of proof on the issue of offsets, not appearing in the instruction actually read by the judge, the record on appeal contains no indication that this instruction was rejected or refused by the court.[5]

From the indication that appellant "requested" the instruction on burden of proof actually given, we must assume that the instruction referred to in footnote number 5 was withdrawn by appellant.

[4]"In this action, the plaintiffs have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. That the defendant KARL FRUDENFELD, M.D., was negligent.

"2. That the negligence of the defendant was a legal cause of injury and damage to the plaintiff.

"3. The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damages, and the amount thereof.

"By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who had the burden of proving it.

"In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it." (B.A.J.I., No. 2.60.)

[5]"PLAINTIFF'S REQUESTED INSTRUCTION NO.—

"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. That the defendant KARL FRUDENFELD, M.D., was negligent.

"2. That the negligence of the defendant was the proximate cause of injury and damage to the plaintiff; and

"3. The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damage, and the amount thereof.

"The defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. The nature and extent of any offsets for benefits conferred to the plaintiff as a proximate result of the defendant's conduct.

"By a preponderance of the evidence is meant such evidence as, when weighed with that opposing it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who has the burden of proving it.

"In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it." (B.A.J.I., No. 2.60.)

Having requested the instruction pertaining to burden of proof actually read to the jury by the trial judge, appellant cannot assert the giving thereof as a ground for reversal. (6 Witkin, Cal. Procedure, *supra*, Appeal, § 266, p. 4257.)

■ Appellant argues that the trial court erred in failing to instruct the jury as to how the evidence of appellant's refusal to have an abortion or place her child for adoption should be treated on the issue of mitigation of damages.

On page 7 of her opening brief on appeal, appellant alludes to an instruction requested on her behalf on the abortion-adoption issue, which was rejected by the court. However, the record on appeal contains no such requested and refused instruction.

It is settled law that in order to raise on appeal the failure of the trial court to instruct on an issue, as appellant attempts to do here, "... the aggrieved party must request the *specific proper instruction.*" (4 Witkin, Cal. Procedure (2d 1971) Trial, § 194, p. 3013.) The record on appeal before us is bereft of a legally correct instruction requested on behalf of appellant taking into account the holding in *Stills v. Gratton, supra,* 55 Cal.App.3d 698, that the jury is not to consider, on the issue of mitigation of damages, appellant's refusal to abort or place her child for adoption.

In *Stills, supra,* 55 Cal.App.3d at page 709, the court states that in the event that the trier of fact finds for plaintiff on the issues of liability and damages, the defendant may prove, as an offset, any special benefit conferred by defendant's conduct. Appellant contends that an instruction submitted on her behalf and dated July 31, 1980, taking into account this aspect of the holding in *Stills,* and section 920 of the Restatement of Torts was improperly rejected by the court.[6]

However, it is to be noted that the clerk's transcript also contains a special instruction which appears to have been prepared taking into ac-

---

[6]"DAMAGES—DEFENDANT ENTITLED TO OFFSET

"If you find that the defendant was negligent, and that such negligence proximately caused injury and damage to the plaintiff, you must further consider whether the defendant's negligent conduct has conferred upon the plaintiff any special benefit; and if so, you are to consider the value of the benefit so conferred in mitigation of the damages." (Rest., Torts, § 920.)

count the holding in *Stills, supra,* and section 920 of the Restatement of Torts.[7]

Although this instruction is entitled "Defendant's Requested Instruction No. —", the legend on the instruction, endorsed by the trial judge, indicates that it was requested by *plaintiff,* and that the instruction was given as requested.

The record on appeal contains no indication that the instruction referred to in footnote 6 was rejected by the court, and, in view of appellant's having requested the instruction on offsets actually read to the jury, we infer that appellant withdrew or abandoned it.

Appellant, having requested the instruction on offset actually given, is estopped from complaining thereof on appeal.

■ Appellant next asserts that the trial court committed error in not permitting counsel for appellant, on cross-examination of respondent, to attempt to impeach respondent by showing that certain denials to requests for admissions, served prior to trial, were inconsistent with admissions made by respondent on the witness stand. The court ruled that admissions made by respondent in response to requests therefor could be read to the jury but that denials to requests for admission could not be so read.

Although the record is unclear as to precisely what pretrial denials to requests for admission appellant was attempting to introduce, the trial

---

[7]"DEFENDANT'S REQUESTED INSTRUCTION NO. —

"If under the Court's instructions you should find that plaintiff is entitled to a verdict, you will award her such sum as under all of the circumstances of the case may be just compensation for the loss, suffered by her by reason of her child's birth.

"In determining her loss, you should take into consideration what it will cost the plaintiff to support and educate said child. Offsetting said amount, you should consider any special benefits that plaintiff is *reasonably certain to receive* from the earnings and services of said child, both during the child's minority and adulthood and throughout the entire period of their common life expectancy. Further, you are to offset any amounts which plaintiff has already, and will in the future, gain with reasonable certainty, from the comfort, society, and protection of said child.

"In weighing these matters, you may consider the state of health and physical condition of the plaintiff, and her child, their station in life, their respective expectancies of life as shown by the evidence; the disposition of the child, whether kindly, affectionate, or otherwise; whether or not there is a likelihood that the child will contribute to the support of the plaintiff at some time in the future; and all other facts in evidence that throw light upon the question of loss or gain by the mother as a result of having this child."

judge ruled that what was significant to appellant was admissions and that under section 352 of the Evidence Code, it was excessively time consuming to go into pretrial denials. We hold that such a ruling was within the sound discretion of the trial judge.

In any event, no prejudice to appellant could be said to flow from the court's ruling in that appellant prevailed on the issue of liability, and the subject matter of the requests for admission does not appear to be relevant to the issue of damages.

■ Appellant further contends that the damages awarded her in the sum of $1,708, for medical expenses incurred in connection with the birth of her child, are inadequate as a matter of law.

A precondition to such contention on appeal is a motion for a new trial on such grounds. (*Jenkins v. Dahnert* (1962) 202 Cal.App.2d 567 [21 Cal.Rptr. 15].) Appellant made such a motion in the trial court, which was denied on September 25, 1980.

Under Code of Civil Procedure section 657, a new trial shall not be granted upon the issue of inadequacy of damages "... unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the ... jury clearly should have reached a different verdict or decision."

The trial judge, under the foregoing statutory mandate, determined that the damages awarded appellant were not inadequate, as a matter of law.

On appeal, we cannot set aside the determination of the jury and of the trial judge, unless the verdict is so plainly and outrageously inadequate, as to suggest passion or corruption on the part of the jury. (See *Gallentine v. Richardson* (1967) 248 Cal.App.2d 152 [56 Cal.Rptr. 237].)

An award of the exact amount of certain special damages, when general damages were also obviously incurred, is sometimes a hallmark of a legally inadequate award.

However, in the instant case, as appellant concedes, under instructions which were given by the trial judge, based upon the holding in

*Stills, supra*, the jury was entitled to offset against the damages sustained by appellant, the benefits conferred upon her by virtue of the birth of her daughter. (See fn. 7, *ante*.)

Appellant argues that the testimony of her expert economist, James Schierholz, indicates that the present value of probable expenses of raising her daughter to age 18, was in the approximate amount of $80,000, that appellant's lost earnings, net of unemployment compensation, were in the amount of approximately $5,500, and that the present value of a college education for her daughter is in the approximate amount of $10,000. In addition, appellant points out, she suffered general damages associated with the pain of childbirth, plus the embarrassment of being pregnant and unmarried.

Appellant admitted that her daughter, Tahnee, is a beautiful child, that her child brings her more pleasure than pain, and that her relationship with the father of her child, Mr. Rudy Romero, had been enhanced by the birth of the child.

Accepting, arguendo, the contentions of appellant concerning her past and future special damages, and the general damages claimed by her, we cannot say as a matter of law, that the jury award was plainly and outrageously inadequate, or that the trial judge erred in upholding it. Our determination is based upon our recognition of the duty of the jury, under its instructions, to take into account, as an offset to the award in favor of appellant, the special benefits inherent in the parent-child relationship.

A jury is uniquely qualified to determine the value to be placed upon such a relationship, and its net award will be upheld in the absence of proof of passion or corruption. Such proof is nonexistent here.

■ Appellant further contends that the trial court erred in denying her motion for a new trial on the ground of irregularity or misconduct on the part of the jury. (Code Civ. Proc., § 657, subds. 1, and 2.)

In support of her position, appellant submitted the affidavit of juror Arthur J. Strauthern, dated August 19, 1980. This affidavit, which was submitted under the provisions of section 1150 of the Evidence Code, stated: "... I also felt that the lady members of the jury were unfair because, they stated they felt that Morris being an un-married female

should not have been having sexual relations and it was her fault for becoming pregnate (*sic*)...."

Counsel for appellant contends that during the jury selection process, he expressly put a question to the jurors as to whether the fact that the case involved a child born out of wedlock would create a prejudice in the minds of the jurors, and that they all answered in the negative.

It is argued that the Strauthern affidavit makes it clear that such bias existed. Counsel for appellant states that the foregoing purported concealment of bias or prejudice on the part of members of the jury on voir dire entitles appellant to a new trial under the holding of the Supreme Court in *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98 [95 Cal.Rptr. 516, 485 P.2d 1132].

It is significant to note that although juror Strauthern states in his affidavit that he would have awarded $50,000 to appellant, that, in point of fact, he voted with the eleven other members of the jury for the actual award in the sum of $1,708.

In opposition to the affidavit of juror Strauthern, the respondent submitted to the court the declaration of Fred A. Lincoln, Jr., the jury foreman, dated August 28, 1980.

Mr. Lincoln's declaration contained the following statement: "That all the jurors deliberated openly and had their say.

"That the ultimate judgment and verdict was agreed upon by everyone.

"That we intentionally avoided moralizing and did not reach the verdict based on whether or not a doctor would advocate an abortion or whether or not plaintiff engaged in sexual relations outside of wedlock...."

When conflicting affidavits are received, as is the case in the case at bench, it is the obligation of the trial judge hearing the new trial motion to make a determination of fact. Our review is limited to the inquiry as to whether there is any support for the trial judge's ruling, and the order denying the motion for new trial will be reversed only on a strong affirmative showing of abuse of discretion. (See *Jacoby* v. *Feldman*

(1978) 81 Cal.App.3d 432 [146 Cal.Rptr. 334].) No such showing has been made by appellant.

In further support of her position that the trial court erred in denying her motion for a new trial on the ground of irregularity or misconduct of the jury, appellant has submitted her declaration pertaining to juror Fred Lincoln, who was the foreman of the jury.

It is suggested in the declaration that Mr. Lincoln did not answer truthfully on voir dire when the jurors were asked whether any of the persons on the panel knew appellant.

It is inferred in the declaration of appellant that Mr. Lincoln knew appellant in that both appellant and Mr. Lincoln were employees at Northrup and, further, that there was ill will between Mr. Lincoln and a personal friend of the appellant, who works in the department in which Lincoln is employed, namely, the planning department.

Mr. Lincoln submitted a counteraffidavit, as hereinabove indicated, in which he stated as follows: "... That I disclosed during voir dire that I worked at Northrup.

"That I was asked if I knew DEE MORRIS and I stated I did not.

"That prior to trial I did not know DEE LOIS MORRIS.

"That I have not asserted to anyone that I knew DEE LOIS MORRIS prior to Trial.

"That I have no ill feeling toward anyone who is known to be a friend of plaintiff DEE LOIS MORRIS...."

As we have already stated, our review in connection with the action of the trial judge in denying the motion for a new trial is limited to the inquiry as to whether there is any support for the ruling of the trial judge, and such an order will be reversed only on a strong affirmative showing of abuse of discretion. (See *Jacoby, supra*, 81 Cal.App.3d 432.)

We find no such abuse of discretion here.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied September 13, 1982.