Karen S. GIRDLEY and Jeffrey E.
Girdley Plaintiffs–Appellants,

v.

Stephen H. COATS, D.O., and Stephen
H. Coats, Inc., Defendants–
Respondents.

No. 74029.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1992.

David W. Ansley, Michael P. Mergen,
James Condry, Springfield, for plaintiffs-
appellants.

William C. Love, Kent O. Hyde, Spring-
field, for defendants-respondents.

BENTON, Judge.

Plaintiffs, Karen and Jeffrey Girdley,
filed a four-count petition against Stephen
H. Coats, D.O., and Stephen H. Coats,
D.O., Inc., for a negligently performed bi-
lateral tubal ligation. Count III of the
Girdleys' petition sought "the reasonable
cost of raising and educating the child"
because of the negligence of Dr. Coats.
Count IV sought the same expenses based
on a breach of contract theory. The trial
court dismissed Counts III and IV and pur-
suant to Rule 74.01(b) determined that the
order was final for purposes of appeal.

On appeal, the Court of Appeals, South-
ern District, reversed and remanded the
decision of the trial judge with directions to
deny the motion to dismiss Counts III and
IV. Transfer was granted by this Court.
The judgment of the trial judge dismissing
Counts III and IV is affirmed.

In reviewing the dismissal, an appellate
court assumes all pleaded facts to be true
and makes every favorable inference in
favor of plaintiffs that may reasonably be
drawn from those facts; if any ground is
shown that would entitle the plaintiff to
relief, the dismissal is improper. *Shelton*

*v. St. Anthony's Medical Center,* 781 S.W.2d 48, 49 (Mo. banc 1989).

Plaintiffs allege they were unable to afford the expense of any more children. Mrs. Girdley thus consulted with Dr. Coats who recommended bilateral tubal ligation. On March 24, 1988, she underwent surgery and was informed by Dr. Coats that he had ligated the right fallopian tube but that her left ovary and corresponding fallopian tube were congenitally absent. After the sterilization procedure, Dr. Coats advised that she was sterile with no risk of conception. On April 29, 1989, Mrs. Girdley delivered the couple's third child.[1]

## I. Cause of Action

Various causes of action arise involving the birth of a child. Although some confusion exists, a consensus has developed labeling the various actions: (1) "wrongful conception" or "wrongful pregnancy"—a medical malpractice action brought by the parents of a child born after a physician negligently performed a sterilization procedure; (2) "wrongful birth"—a claim brought by parents of a child born with defects; and (3) "wrongful life"—a claim brought by the child suffering from such defects. *Wilson v. Kuenzi,* 751 S.W.2d 741, 743 (Mo. banc 1988), *cert. denied,* 488 U.S. 893, 109 S.Ct. 229, 102 L.Ed.2d 219 (1989), declines to recognize causes of action for wrongful birth and wrongful life in this state.

In Missouri, the cause of action for the tort of wrongful conception was specifically recognized in *Miller v. Duhart,* 637 S.W.2d 183 (Mo.App.1982), which noted that such an action has strong support in the law and is "merely a descriptive label for a form of malpractice". *Id.* at 188. Traditionally, Missouri does not analyze malpractice in terms of contract law. See *Barnhoff v. Aldridge,* 38 S.W.2d 1029 (Mo. 1931); *Spruill v. Barnes Hospital,* 750 S.W.2d 732 (Mo.App.1988); *Sanders v. H. Nouri, M.D., Inc.,* 688 S.W.2d 24 (Mo.App. 1985).

Clearly, there is a legally cognizable cause of action. However, the parties are sharply divided as to the appropriate measure of damages. The issue may be framed: If a negligently performed sterilization procedure results in the birth of a healthy child, may the plaintiff recover the expenses of raising and educating that child?

## II. Theories of Recovery

Numerous courts have wrestled with this issue, advancing several theories of recovery, along with a plethora of supporting reasons.

A review of the cases establishes that there are four possibilities: (1) no recovery rule; (2) full recovery rule; (3) limited damages rule; and (4) benefits rule. An overwhelming majority of jurisdictions has adopted the limited damages rule whereby recovery of the expenses of raising and educating a child is denied as an element of damages[2].

1. Although not specifically pleaded, counsel indicated at oral argument that the child was normal and healthy.

2. *Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison,* 349 A.2d 8 (Del. 1975) (overruled on other grounds but apparently still valid authority, *See,* Russell G. Donaldson, Annotation, *Recoverability of Cost of Raising Normal, Healthy Child Born as a Result of Physician Negligence or Breach of Contract or Warranty,* 89 A.L.R. 4th 632, 641 (1991)); *Flowers v. District of Columbia,* 478 A.2d 1073 (D.C.App.1984); *Fassoulas v. Ramey,* 450 So.2d 822 (Fla.1984); *Public Health Trust v. Brown,* 388 So.2d 1084 (Fla. Dist. Ct.App.1980); *Fulton–De Kalb Hospital Authority v. Graves,* 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baum-*

*gartner,* 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983); *Garrison v. Foy,* 486 N.E.2d 5 (Ind. App.1985); *Nanke v. Napier,* 346 N.W.2d 520 (Iowa 1984); *Byrd v. Wesley Medical Center,* 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber,* 648 S.W.2d 861 (Ky.1983); *Pitre v. Opelousas General Hospital,* 530 So.2d 1151 (La.1988); *Macomber v. Dillman,* 505 A.2d 810 (Me.1986); *Rinard v. Biczak,* 177 Mich.App. 287, 441 N.W.2d 441 (1989) (though Michigan's position is unclear, *See,* Russell G. Donaldson, Annotation, *Recoverability of Cost of Raising Normal, Healthy Child Born as a Result of Physician Negligence or Breach of Contract or Warranty,* 89 A.L.R. 4th 632, 658–660 (1991)); *Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin,* 179 N.J.Super. 465, 432 A.2d 556 (App. 1981); *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Jackson v.*

Contrary to this majority position, appellants urge that Missouri adopt the full recovery rule claiming that such a rule would protect a constitutional right not to procreate and would allegedly promote sound social policies. Further, appellants assert that the full recovery rule is more in keeping with traditional tort principles. Appellants' position enjoys support in, at most, only three jurisdictions. *Custodio v. Bauer,* 251 Cal.App.2d 303, 59 Cal Rptr. 463 (1967); *Marciniak v. Lundborg,* 153 Wis.2d 59, 450 N.W.2d 243 (1990); *Lovelace Medical Center v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991) (emphasizing that wrongful conception invaded the family's financial security).

Several courts have persuasively articulated the various rationales supporting the limited damages rule—most being variations on themes of public policy. The Kansas Supreme Court concluded that a parent cannot be damaged by the birth of a healthy child:

> As a matter of public policy, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable. We recognize wrongful death actions because of the great value we place on human life.... The birth of a normal, healthy child may be one of the consequences of a negligently performed sterilization, but we hold that it is not a legal wrong for which damages should or may be awarded. *Byrd v. Wesley Medical Center,* 699 P.2d at 468.

The Arkansas Supreme Court reasoned:

> We are persuaded for several reasons to follow those courts which have declined to grant damages for the expense of raising a child. It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question; every question cannot be answered in terms of

dollars and cents. We are also convinced that the damage to the child will be significant; that being an unwanted or "emotional bastard," who will some day learn that its parents did not want it and, in fact, went to court to force someone else to pay for its raising, will be harmful to that child. It will undermine society's need for a strong and healthy family relationship. We have not become so sophisticated a society to dismiss that emotional trauma as nonsense. *Wilbur v. Kerr,* 628 S.W.2d at 571.

The Illinois Supreme Court analyzed the issue:

> One can, of course, in mechanical logic reach a different conclusion, but only on the ground that human life and the state of parenthood are compensable losses. In a proper hierarchy of values the benefit of life should not be outweighed by the expense of supporting it. Respect for life and the rights proceeding from it are at the heart of our legal system and, broader still, our civilization. *Cockrum v. Baumgartner,* 69 Ill.Dec. at 172, 447 N.E.2d at 389.

Though arguing that the full recovery rule is a natural extension of general principles of tort law, appellants necessarily ignore some of those general principles. The issue of mitigation of damages demonstrates the fallacy of applying strict tort principles in cases where the alleged injury is the birth of a normal, healthy child. It is generally recognized that one injured by the tort of another is required to mitigate damages. *Phegley v. Graham,* 358 Mo. 551, 215 S.W.2d 499, 505 (1948). In the case of a pregnancy caused by a negligent sterilization procedure, either adoption or abortion would clearly mitigate the expense of raising the child. These options illustrate the difficulty in applying strict tort principles to damages from wrongful conception.

*Bumgardner,* 318 N.C. 172, 347 S.E.2d 743 (1986); *Johnson v. University Hospitals of Cleveland,* 44 Ohio St.3d 49, 540 N.E.2d 1370 (1989); *Morris v. Sanchez,* 746 P.2d 184 (Okla.1987); *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982); *Smith v. Gore,* 728 S.W.2d 738 (Tenn.1987); *Terrell v. Garcia,* 496 S.W.2d 124 (Tex.Civ.App.1973); *C.S. v. Nielson,* 767 P.2d 504 (Utah 1988); *Miller v. Johnson,* 231 Va. 177, 343 S.E.2d 301 (1986); *McKernan v. Aasheim,* 102 Wash.2d 411, 687 P.2d 850 (1984); *James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872 (1985); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo.1982).

Yet courts recognizing this cause of action have rejected the argument that parents should choose among the various methods of mitigation—adoption, abortion, etc.—seeing the moral issues begin to make inroads into an already emotional and speculative process of determining damages. *Boone v. Mullendore*, 416 So.2d at 723.

Speculative results are not a proper element of damages. *Wise v. Sands*, 739 S.W.2d 731, 734 (Mo.App.1987). The costs of child rearing—and especially education—are necessarily speculative. Who can divine, soon after birth, whether the child will be a financial boon or burden to the parents, what level of education will be required or what unique expenses could arise? These determinations are beyond the scope of probative proof. Likewise, an attempt to quantify the expense of raising a child and offsetting that expense by the "benefits" conferred on the family is neither workable nor desirable.[3]

> Perhaps the costs of rearing and educating the child could be determined through use of actuarial tables or similar economic information. But whether these costs are outweighed by the emotional benefits which will be conferred by that child cannot be calculated. The child may turn out to be loving, obedient and attentive, or hostile, unruly and callous. The child may grow up to be President of the United States, or to be an infamous criminal. In short, it is impossible to tell, at an early stage in the child's life, whether its parents have sustained a net loss or net gain. *McKernan v. Aasheim*, 687 P.2d at 855.

Judge Turnage's eloquent dissent proposes the "benefits rule," offsetting the "pecuniary and non-pecuniary" benefits to parents from having the child *against* the costs of rearing a child. However, Re-

statement (Second) of Torts § 920 cmt. b (1977) provides:

> Damages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited.

The dissent thus demonstrates that principles of tort law cannot strictly be applied to this issue.

To the extent that general tort principles militate against application of the full recovery rule, appellants shift into a policy analysis. This Court declines the invitation to waft between strict application of tort principles and application of public policy, in order to achieve the result of shifting the responsibility of supporting a child from its parents to a third party. Cf. § 568.040 RSMo Supp.1991 (duty of parent to support minor child).

### III. Types of Recoverable Damages

■ The question remains which specific damages are recoverable. Although the issue of damages was not directly before the court in *Miller v. Duhart*, the court of appeals summarized the type of damages:

> As a form of malpractice, "wrongful conception" gives rise to compensatory damages that are measurable. Such damages might include prenatal and postnatal medical expenses, the mother's pain and suffering during the pregnancy and delivery, loss of consortium, and the cost of a second, corrective sterilization procedure. *Miller v. Duhart*, 637 S.W.2d at 188.

The measure of damages in a wrongful conception case shall not include the expenses of raising and educating a healthy, normal child. However, in addition to the damages listed in *Miller v. Duhart*, plaintiffs are entitled to recover, subject to appropriate proof, emotional distress, loss of wages, pain and suffering associated with

---

3. The benefits rule has been adopted in six jurisdictions. *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983); *Morris v. Frudenfeld*, 135 Cal. App.3d 23, 185 Cal.Rptr. 76 (1982); *Ochs v. Borrelli*, 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984); *Burke v. Rivo*, 406 Mass. 764, 551 N.E.2d 1 (1990); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169 (Minn.1977) (though Minnesota's position is unclear, See, Russell G. Donaldson, Annotation, *Recoverability of Cost of Raising Normal, Healthy Child Born as a Result of Physician Negligence or Breach of Contract or Warranty*, 89 A.L.R. 4th 632, 660–662 (1991)).

the second corrective procedure, and any permanent impairment suffered by the parents as a result of the pregnancy, the delivery, or the second corrective procedure.

The judgment of the trial court is affirmed.

ROBERTSON, C.J., and COVINGTON, BLACKMAR, and THOMAS, JJ., concur. WILLIAM E. TURNAGE, Special Judge, concurs in part and dissents in part in separate opinion filed.

RENDLEN, J., concurs in opinion of WILLIAM E. TURNAGE, Special Judge.

HOLSTEIN, J., not sitting.

WILLIAM E. TURNAGE, Special Judge, concurring in part and dissenting in part.

I concur in the holding that there is a cause of action for a so-called "wrongful conception" or "wrongful pregnancy." To me these terms are complete misnomers because I believe the cause of action to be simply one of medical malpractice which happens to involve the birth of a child.

I respectfully dissent from the holding that the cost of rearing a healthy child born as the result of a physician's malpractice in the performance of a sterilization procedure is not recoverable. The majority has faithfully set out the reasons articulated by a number of states for their denial of the right to recover the costs of rearing a healthy child. Before addressing the reasons followed by the majority in reaching its result, it is well to state what I believe this case is not about. I do not believe this case involves any question of the right to life, the right to an abortion, the value of human life, or the value of the family as an integral unit of our society. I believe this case is about medical malpractice and whether or not an exception will be carved out to exonerate physicians from liability for the bulk of the damages which flow from malpractice in performing sterilization procedures.

The principal reason given by the states which deny recovery for the costs of rearing a healthy child is the fact that society places such a high value on human life that the birth of a healthy child cannot be a legal wrong for which damages may be recovered. This concept embodies the belief that there is a sanctity in human life which will be somehow undermined if damages are allowed against a negligent physician for the cost of rearing a child. In addressing this argument, the court in *Ochs v. Borrelli*, 187 Conn. 253, 445 A.2d 883, 885[2] (1982), held that this argument "founders on its premise that a recognition of the economic costs of parenthood is necessarily a negative judgment on the child who occasions them." The court further held that it could take judicial notice of the fact that rearing a child is a costly enterprise which is injurious to the parents. The court further stated:

> There can be no affront to public policy in our recognition of these costs and no inconsistency in our view that parental pleasure softens but does not eradicate economic reality. The plaintiffs' testimony at trial confirming their love for Catherine should not become a reason for denying them financial relief.

*Id.* 445 A.2d at 885–86[2].

In *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429, 435[3] (1984), the court answered the above argument in two ways. The court stated:

> To adopt such a policy and rule of law would be to subject a physician to liability for the direct, foreseeable and natural consequences of all negligently performed operations except those involving sterilization—a result, we think, completely at odds with reason. That the public policy of Maryland may foster the development and preservation of the family relationship does not, in our view, compel the adoption of a per se rule denying recovery by parents of child rearing costs from the physician whose negligence has caused their expenditure. In other words, it is not to disparage the value of human life and the societal need for harmonious family units to protect the parents' choice not to have children by recognizing child rearing costs as a compensable element of damages in negligent sterilization cases.

In *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 584, 667 P.2d 1294, 1299 (1983), the court stated that even though a family can adjust to the birth of an unplanned child it must be recognized that there are cases where such birth can cause emotional or economic problems to the parents. In Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant,* 68 Va.L.Rev. 1311, 1316–17 (1982), the author considered this argument and stated:

> Although they may well have realized that they would love a child if one were born to them, they may also have realized that their affection would not provide the money to feed the child or the time for the working mother to resume her interrupted career. To disallow the parents' recovery because they love their child is to leave uncompensated the significant emotional and economic harms that may accompany a wrongful birth. In a family of limited means, the application of an overriding-benefit theory injures the child as well as the parents, since the exclusion of all damages denies the family a fund from which to provide for the unplanned child.

Further, as stated in *Lovelace Medical Center v. Mendez,* 111 N.M. 336, 342, 805 P.2d 603, 609 (N.M.1991), "it is not the birth of the child that is the harm" but "the invasion of the parents' interest in the financial security of their family—an invasion clearly foreseeable (or at least reasonably to be foreseen, as a jury might determine) by the doctor as the probable consequence of his negligence in performing the procedure in question."

These authorities, to me, contain the more persuasive reasoning on the subject. To award damages to the parents for the rearing of an unplanned child does not disparage the worth of the child or indicate a disregard on the part of the court for the worth of a human being. The awarding of such damages is simply the recognition that in today's world it is costly to rear a child and, in fact, the presence of an unplanned child in a family of limited means or in a family with a working mother can prove to be a disruptive factor which will damage the family unit if the child does not bring with it some financial help.

The majority does not suggest, nor is there reason that it should, that the decision of the Girdleys for the wife to undergo a sterilization procedure was in any way illegal or improper. Having elected to undergo a proper procedure to limit the size of their family, this court should not ignore the reality of the hardship which the arrival of an unplanned child can create. To do so is simply to take a "head in the sand" approach to the problem.

The majority opinion quotes from *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982), to the effect that allowing the recovery of such damages will harm the child when it finds out that it was unplanned or that the parents "did not want it" and brought suit for damages for the costs of its rearing. The note in 68 Va.L.Rev. at 1329 answers this argument when it states:

> Several courts have argued that the wrongful birth suit should be denied because of the psychological harm to the child who learns of it in later years, but this psychological damage, if it exists, will certainly be less harmful than the hardship of growing up ill-clothed, ill-fed, and ill-educated in a family whose financial balance was destroyed by the child's unplanned birth and whose members resent being forced to share their resources with an unexpected newcomer.

Further, the identity of the family and the child could be shielded by the use of initials in court proceedings as is currently done in juvenile cases.

The majority holds that damages cannot be awarded because it is generally recognized in tort law that the plaintiff is required to mitigate damages. In this case the majority holds that to mitigate damages the parents could choose either adoption or abortion. The rule cited by the majority is tempered by the fact that the rule requires an injured party to only make a reasonable effort to minimize damages. *Fletcher v. City of Independence,* 708 S.W.2d 158, 172 (Mo.App.1986). In *Troppi*

*v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511, 520[8] (1971), the court held that the necessity of a plaintiff to make a reasonable effort to mitigate damages is ordinarily to be decided by the trier of fact but that as a matter of law no mother can be reasonably required to abort "even if legal" or "place her child for adoption." A pointed response to this argument was given in *Schork v. Huber,* 648 S.W.2d 861, 866–67 (Ky.1983) (Leibson, J., dissenting):

> Both the best interest of the child, and the natural instincts of the parent, make it unreasonable to require parents to submit the child in the womb to abortion, or the child in the crib to adoption. The defendant has no right to insist that the victims of his negligence have the emotional and mental makeup to abort or place the child for adoption.

No one could argue persuasively that it would be reasonable to require a mother to undergo an abortion or place her child for adoption in order to minimize the damages which could be assessed against the negligent physician who performed the sterilization on her. This rule has no application in the manner suggested by the majority.

The majority holds that the costs of child rearing are speculative. It should first be noted that this court by Rule 88.01 has adopted Civil Procedure Form No. 14 for the amount of child support to be awarded in actions involving child support. Courts have long awarded reasonable amounts necessary for the support of children. Further, in *Burke v. Rivo,* 406 Mass. 764, 551 N.E.2d 1, 5[5] (1990), the court answered this argument:

> The determination of the anticipated costs of child-rearing is no more complicated or fanciful than many calculations of future losses made every day in tort cases. If a physician is negligent in caring for a newborn child, damage calculations would be made concerning the newborn's earning capacity and expected medical expenses over an entire lifetime. The expenses of rearing a child are far more easily determined. If there is any justification for denying recovery of normal tort damages in a case of this character, it is not that the cost of rearing a

child is incapable of reasonable calculation or is too great to impose on a negligent physician.

In *University of Arizona,* the court held that the right to damages must be established without speculation but that uncertainty as to the amount will not preclude recovery and is a question for the jury. 136 Ariz. at 586, 667 P.2d at 1301[6]. In *Jones,* the court noted that calculations of the costs of rearing a child are based on well recognized economic factors regularly made by actuaries for estate planners and insurance companies and that such costs are well appreciated by the average citizen through firsthand experience. 473 A.2d at 436[5].

In this state courts have recognized that there is no fixed measure, standard, or table which the jury can use as an accurate guide in assessing damages for pain and suffering. *Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291, 302 (Mo. banc 1978). Nevertheless, courts have not wrung their hands over the difficulty of the task and refused to allow juries to assess damages for pain and suffering. As Judge Prewitt wrote in the well reasoned opinion of the court when this case was before the Southern District, the cost of rearing a child is no more speculative than the issue of damages in many tort cases, especially those in wrongful death cases.

I would allow as a recoverable element of damage the costs of rearing a child to the age of majority but such damages to be offset by the pecuniary and non-pecuniary benefits which will inure to the parents by reason of their relation to the child. *University of Arizona,* 667 P.2d at 1301[7, 8]. In *Jones* the court held that damages must be offset by benefits which would allow the jury to mitigate the damages by weighing them against the worth of the child's companionship, comfort, and aid to the parents. In addition the jury should consider family size and income. 473 A.2d at 436–37[6, 7]. Assessing the benefits would be no more difficult than assessing damages for wrongful death under the items permitted to be considered by § 537.090, RSMo 1986.

For these reasons I would reverse the judgment.

RENDLEN, J., concurs.