Jerald WILLIAMS and Tammy Williams, Appellants,

v.

Jeffrey VAN BIBER, M.D., Respondent.

No. WD 47567.

Missouri Court of Appeals, Western District.

Feb. 22, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application for Transfer Sustained May 26, 1994.

Case Retransferred Nov. 22, 1994.

Court of Appeals Opinion Readopted Nov. 28, 1994.

Laurence R. Tucker, Watson, Ess, Marshall and Enggas, Kansas City, for appellants.

James Bandy, Blackwell Sanders Matheny Weary and Lombardi, Kansas City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Plaintiffs Gerald and Tammy Williams, husband and wife, appeal the trial court's order sustaining the motion of Jeffrey Van Biber, M.D., defendant, to dismiss or for partial summary judgment as to the claims for medical expenses, loss of income and emotional distress associated with their son, Cody Williams' birth defects. The Williams initiated suit for the alleged failed vasectomy procedure performed on Mr. Williams by Dr. Van Biber. Cody was born to the Williams subsequent to the vasectomy procedure. A month after Cody's birth, his severely defective heart condition was discovered. He died approximately seven months following birth. Numerous medical procedures to correct or improve Cody's heart deformity and circulatory system were alleged by plaintiffs. The trial court entered judgment pursuant to Rule 74.01(b), making its decision final and appealable. The issue presented is whether Cody's parents may recover as damages medical expenses associated with Cody's birth defects and attempts to sustain Cody's life, and the lost income and emotional dis-

tress resulting from the birth defects, assuming for the limited purposes of this issue on appeal, the vasectomy performed on Mr. Williams was performed prior to Cody's conception, was inadequately or improperly performed, and constituted malpractice. Damages arising from the birth defects are not actionable. The judgment of the trial court sustaining Dr. Van Biber's motion to dismiss, or alternatively, for partial summary judgment, as to the damages associated with Cody's birth defects is affirmed.

During Tammy Williams' second pregnancy, she experienced several medical problems, including gestational diabetes. As a result of the medical difficulties experienced by Mrs. Williams, her obstetrician informed her that an additional pregnancy could place Mrs. Williams and her baby at jeopardy. He advised Mrs. Williams not to become pregnant again. Mr. and Mrs. Williams determined that to avoid pregnancy, Mr. Williams would sustain a vasectomy.

Jeffrey Van Biber, M.D., practices medicine in Bates County. As a result of the advice received by Mrs. Williams from her obstetrician, the Williams consulted Dr. Van Biber about the medical procedure associated with vasectomy. The plaintiffs allege that Dr. Van Biber failed to inform them of the risk that the vasectomy procedure could fail.

On August 25, 1989, Dr. Van Biber performed a vasectomy on Mr. Williams. Following standard procedure, a sample of Mr. Williams' semen was examined by Dr. Van Biber to determine the presence of sperm. The Williams were advised that the test revealed an absence of sperm, that Mr. Williams was sterile, and that the couple need not continue the use of contraceptives.

In May 1990, Mrs. Williams learned that she was pregnant. Dr. Van Biber examined an additional sample of Mr. Williams' semen on June 11, 1990, and identified viable sperm. During her pregnancy, Mrs. Williams was informed by her obstetrician that she was at some risk of having a child with birth defects, based on Mrs. Williams' family history.

On January 21, 1991, Cody Williams was born. Although appearing to be a healthy baby at birth, on February 26, 1991, Cody's

heart deformities were diagnosed. Cody died seven months after birth.

During his brief life, Cody experienced several hospitalizations and several heart surgeries in attempts to correct the defects or sustain his life. As a result of the medical procedures Cody experienced, his parents incurred medical expenses totaling in excess of $211,000, for which the Williams seek judgment against Dr. Van Biber. Additionally, the Williams' petition seeks recovery for damages resulting from their lost income and emotional distress associated with Cody's birth defects.

The trial court sustained Dr. Van Biber's motion to dismiss, or, alternatively, motion for partial summary judgment as to the damages claimed by Mr. and Mrs. Williams associated with the congenital birth defects of their son and for the lost income and emotional distress associated with Cody's birth defects. The Williams appealed.

Mr. and Mrs. Williams contend that the trial court erred in sustaining Dr. Van Biber's motion to dismiss certain claims for damages for failure to state claims upon which relief can be granted or, alternatively, motion for partial summary judgment, asserting that damages resulting from Cody's congenital birth defects are recoverable in Missouri as the foreseeable result of the failed vasectomy procedure alleged to have been performed on Mr. Williams by the defendant.

■ Appellate courts review combined motions to dismiss or for summary judgment under a summary judgment standard of review. *Board for Architects v. Earth Resources,* 820 S.W.2d 505, 507 (Mo.App.1991). Appeals from summary judgments require the appellate court to review the record in the light most favorable to the party against whom judgment was entered and to accord the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc

1993). Review is essentially de novo, and the propriety of summary judgment is purely an issue of law. *Id.* The trial court's judgment is reviewed on the record submitted and the law. *Id.* Summary judgment is proper when no genuine issue of material facts exists and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 709 (Mo. banc 1990).

■ In Missouri, the cause of action for the tort of wrongful conception was specifically recognized in *Miller v. Duhart,* 637 S.W.2d 183, 188 (Mo.App.1982), and reaffirmed recently in *Girdley v. Coats,* 825 S.W.2d 295 (Mo. banc 1992). The Supreme Court in *Girdley* listed the "consensus" that has developed labeling "(1) 'wrongful conception' or 'wrongful pregnancy'—a medical malpractice action brought by the parents of a child born after a physician negligently performed a sterilization procedure; (2) 'wrongful birth'— a claim brought by the parents of a child born with defects; and (3) 'wrongful life'—a claim brought by the child suffering from such defects." *Girdley,* 825 S.W.2d at 296. Missouri does not recognize the torts of wrongful birth or wrongful life. *Wilson v. Kuenzi,* 751 S.W.2d 741, 746 (Mo. banc 1988), cert. denied 488 U.S. 893, 109 S.Ct. 229, 102 L.Ed.2d 219 (1988); § 188.130, RSMo 1986.[1]

*Girdley* refused to allow, as damages for a wrongful conception action, the costs of raising a healthy, normal child. *Girdley, supra* at 298. The *Girdley* court held, *inter alia,* that costs of raising and educating a child were too speculative to determine wrongful conception damages. The Williams opine that their damages are clearly ascertainable and should be allowed.

The Supreme Court in *Girdley* adopted the measure of damages recoverable in a wrongful conception case as set forth in *Duhart* and included some additional approved damages. *Girdley,* 825 S.W.2d at 298–99. The actionable damages are: prenatal and postnatal medical expenses, the mother's pain

---

**1.** 1. No person shall maintain a cause of action or receive an award of damages on behalf of himself or herself based on the claim that but for the negligent conduct of another, he or she would have been aborted.

2. No person shall maintain a cause of action or receive an award of damages based on the claim that but for the negligent conduct of another, a child would have been aborted. § 188.130, RSMo 1986.

and suffering during pregnancy and delivery; loss of consortium; the cost of a second, corrective sterilization procedure; emotional distress; loss of wages; pain and suffering associated with the second corrective procedure; and any permanent impairment (not economic impairment) suffered by the parents as a result of the pregnancy, delivery or second corrective procedure. *Id.* The Williams contend that postnatal medical expenses would include the medical expenses incurred on behalf of Cody in treating his congenital heart defect. The heart defect was discovered one month after his birth. The Williams claim that postnatal means "after birth," and maintain that medical treatments occurring "after birth" would by definition be postnatal medical treatments.

 Costs for medical treatments to attempt the repair of birth defects not part of the *immediate*[2] postnatal medical expenses of the baby, are not postnatal and are not authorized by *Girdley*. A determination of what medical treatment and within what time span the term "postnatal" encompasses, must of necessity, be limited to the facts and circumstances of each case. In this case, the baby was released two days after birth. All indications were that he was normal. Approximately one month later at a follow-up visit, the doctor discovered that Cody was afflicted with heart defects. Postnatal medical care for the purposes of *Girdley* damages, ended when Cody was discharged from the hospital in an apparently healthy condition. *Girdley*'s authorization of post-natal medical expenses does not include the medical expenses to treat Cody's heart defects.

Even were we to find that *Girdley* does not preclude additional damages, the question would remain whether Dr. Van Biber is liable for Cody's heart defects. This question requires a causation analysis.

Assuming that "but for" the alleged negligence of Dr. Van Biber, Cody Williams would not have been conceived. It follows that Cody could not have been born with birth defects. However, Dr. Van Biber's alleged

negligence did not cause the birth defects. The Supreme Court in *Kuenzi* noted:

A reading of all of the cases persuades us that the real underlying problem in these cases stems from the fact that the courts have either closed their eyes to traditional tort causation, or have leaped over causation. Most courts have tried to cover the leap over causation by blending some causation language into their discussion of damages or into their discussions of public policy considerations.

*Kuenzi*, 751 S.W.2d at 744. *Kuenzi*, which involved failure to administer a test known as amniocentesis to determine whether the unborn child would be born with Down's Syndrome, quoted a New York Judge's opinion dissenting in part and concurring in part with the majority opinion. In pertinent part the Court quoted:

The heart of the problem in these cases is that the physician cannot be said to have caused the defect. The disorder is genetic and not the result of any injury negligently inflicted by the doctor.

. . . .

In sum, by holding the doctor responsible for the birth of a genetically handicapped child, and thus obligated to pay most, if not all, of the costs of lifetime care and support, the court has created a kind of medical paternity suit.

*Id.* at 744–45 (quoting *Becker v. Schwartz*, 46 N.Y.2d 401, 417–22, 413 N.Y.S.2d 895, 904–07, 386 N.E.2d 807, 816–19 (1978) (Wachtler, J., dissenting in part and concurring in part)). *Kuenzi* and *Becker* were wrongful life/birth cases. Conception had already occurred and the parents claimed they would have aborted the child had they known the baby would have birth defects. Other jurisdictions have rejected claims for damages based on birth defects in wrongful conception actions because the defendant could not have caused the abnormality.

That the pregnancy may result in the birthing of an abnormal child is not a foreseeable consequence. As a matter of law, there can be no causal connection

---

**2.** Postnatal relates to an infant immediately after birth. Webster's 3rd New Int'l Dictionary, 1773

(1971).

between the negligence of the doctor and the [birth defect] other than that, but for the birth of the child, there would not have been a [birth defect]. The Court finds that this remote connection does not satisfy the causation in fact element of the concept of proximate cause.

*La point v. Shirley,* 409 F.Supp. 118, 121 (W.D.Tex.1976). An Indiana court in *Garrison v. Foy,* 486 N.E.2d 5 (Ind.App.1985), also rejected a similar claim, finding that there was no "basis to allege ... that any act of the defendant increased the probability of the child being born with a defect ... [or] that the defendant's acts directly caused the defects in an otherwise normal fetus." *Id.* at 10.[3]

█ "But for" the allegedly negligent vasectomy, Cody would not have been born and not having been born he could not have had congenital heart defects. Proximate cause requires more than a 'but for' causation test "because the 'but for' causation test serves only to exclude items that are not causal in fact; it would include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 865 (Mo. banc 1993).

The damages the Williams seek to recover in this appeal are those arising because of the birth defects. *Callahan* states that the "but for" or direct causation must be met in all cases except those involving two independent torts, either of which is sufficient of itself to cause the injury. *Id.* at 862–63. Dr. Van Biber did not cause or directly contribute to cause the birth defects. " 'But for' is an absolute minimum for causation because it is merely causation in fact." *Id.* at 862. The Supreme Court in *Callahan* gives an example of "but for" "carried to the ridiculous." *Id.* at 865. In discussing negligent care of an abscess on an infant that suppressed his immune system and allowed the polio vaccine to cause polio rather than building antibodies, the court gave the example, " 'but for' the

mother and father conceiving the child ... the accident would not have happened." *Id.*

The Williams claim because they allegedly informed Dr. Van Biber that one reason they sought the vasectomy was due to problems with Mrs. Williams' previous two pregnancies[4] and because her obstetrician told them that future pregnancies would be high risk for her and the baby, Dr. Van Biber could reasonably foresee that a failed vasectomy could result in a baby born with birth defects. "Missouri, like many other states, has not applied a pure foreseeability test; we have generally said that the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Callahan,* 863 S.W.2d at 865. "This is generally a 'look back' test but, to the extent it requires that the injury be 'natural and probable,' it probably includes a sprinkling of foreseeability." *Id.* In Missouri "[W]e merely instruct the jury that the defendant's conduct must 'directly cause' or 'directly contribute to cause' plaintiff's injury." *Id.* at 863 (citing MAI 19.01 (1986)).

█ As a matter of law, a negligent vasectomy alone will not normally be a reasonable and probable cause of a child's birth defects. A negligent vasectomy is too far removed from the ultimate damage and the negligence does not directly cause the birth defects. Therefore, the physician's negligent performance of a vasectomy alone is not the proximate cause of medical expenses resulting from a child's birth defects and the physician is not liable for the expenses.

The Williams' point on appeal is denied. The circuit court's judgment dismissing the claims against Dr. Van Biber for damages attributable to the child's birth defects is affirmed.

All concur.

---

**3.** In both *La point* and *Foy,* lack of foreseeability was a major factor in the courts' decision to not find causation.

**4.** Mrs. Williams' first two children did not have any birth defects.