[No. 50157–2.   En Banc.   August 30, 1984.]

KAREN J. MCKERNAN, ET AL, *Appellants,* v. GLEN H. AASHEIM, *Respondent.*

*Anton J. Miller,* for appellants.

*Billett, Comfort & Rosenow,* by *Allan R. Billett* and *Todd M. Worswick,* for respondent.

*Bryan P. Harnetiaux* and *Michael J. Pontarolo* on behalf of Washington Trial Lawyers Association, amici curiae for appellants.

*Daniel E. Tolfree* on behalf of Washington Association of Defense Counsel, amicus curiae for respondent.

DIMMICK, J.—Where a healthy, normal child is born after an unsuccessful sterilization operation, may the parents recover damages in a tort action for the cost of rearing and educating that unplanned child? The trial court held in a partial summary judgment that child–rearing costs could not be recovered. We affirm.

## I

On March 7, 1980, Dr. Glen Aasheim performed a sterilization operation known as a tubal ligation upon Karen McKernan. Despite the operation, Karen became pregnant and gave birth to a healthy, normal child. In February

1983, Karen and her husband James McKernan filed the present lawsuit, alleging that Dr. Aasheim performed the tubal ligation negligently, failed to obtain Karen's informed consent to the tubal ligation, breached his warranty that the tubal ligation would result in permanent sterilization, and violated Karen's constitutional right to prevent future pregnancies. They alleged the following damages:

> an amount equal to the cost of the tubal ligation procedure, and expenses; an amount equal to the cost of the pregnancy and child birth; an amount for pain and suffering associated with the tubal ligation, pregnancy and child birth; an amount for loss of pleasure associated with the tubal ligation, pregnancy and child birth; an amount for the husband's loss of services and consortium associated with the tubal ligation, pregnancy and child birth; *an amount equal to the costs associated with rearing a child, college education, out of pocket expenses and services of parents, and emotional burdens.*

(Italics ours.)

Dr. Aasheim moved for partial summary judgment dismissing that portion of the McKernans' complaint which sought damages for the cost of rearing and educating a normal, healthy child. The trial court granted the motion. We accepted direct review.

## II

We faced this question once before in *Ball v. Mudge,* 64 Wn.2d 247, 391 P.2d 201 (1964), a case in which a healthy child was born after an unsuccessful vasectomy. The parents sued, seeking damages for the expense of supporting the child. We sustained a defense verdict by holding that the jury was justified in finding that the doctor's negligence, if any, was not a proximate cause of the husband's fertility. *Ball,* at 249. We also stated:

> As reasonable persons, the jury may well have concluded that appellants suffered no damage in the birth of a normal, healthy child, whom they dearly love, would not consider placing for adoption, and "would not sell for $50,000," and that the cost incidental to such birth was

far outweighed by the blessing of a cherished child, albeit an unwanted child at the time of conception and birth.

*Ball,* at 250.

This latter language provided an additional rationale for sustaining the defense verdict, by pointing out that, *as a matter of fact,* the jury may have found those particular parents were not damaged by the birth of their unplanned child. We specifically declined, however, to decide whether damages could be recovered for the birth of a healthy, normal child, *as a matter of law. Ball,* at 248–49. Thus, *Ball* provides no guidance as to what our decision should be today.

Turning to cases from other jurisdictions, we discover the vast majority of courts have held that no damages may be recovered for the cost of rearing and educating a healthy, normal child born as the result of medical malpractice. *McNeal v. United States,* 689 F.2d 1200 (4th Cir. 1982); *White v. United States,* 510 F. Supp. 146 (D. Kan. 1981); *Boone v. Mullendore,* 416 So. 2d 718 (Ala. 1982); *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison,* 349 A.2d 8 (Del. 1975); *Public Health Trust v. Brown,* 388 So. 2d 1084 (Fla. Dist. Ct. App. 1980); *Cockrum v. Baumgartner,* 95 Ill. 2d 193, 447 N.E.2d 385 (1983); *Schork v. Huber,* 648 S.W.2d 861 (Ky. 1983); *Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin,* 179 N.J. Super. 465, 432 A.2d 556 (1981); *Weintraub v. Brown,* 98 A.D.2d 339, 470 N.Y.S.2d 634 (1983); *Sorkin v. Lee,* 78 A.D.2d 180, 434 N.Y.S.2d 300 (1980); *Sala v. Tomlinson,* 73 A.D.2d 724, 422 N.Y.S.2d 506 (1979); *Mason v. Western Pa. Hosp.,* 499 Pa. 484, 453 A.2d 974 (1982); *Terrell v. Garcia,* 496 S.W.2d 124 (Tex. Civ. App. 1973); *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo. 1982).

These courts have denied recovery of child–rearing costs for a variety of reasons. Many hold that the benefits of joy, companionship, and affection which a healthy child can provide outweigh the costs of rearing that child. *See, e.g., Mason v. Western Pa. Hosp., supra* at 487; *Terrell v.*

*Garcia, supra* at 128. This view was well expressed in *Public Health Trust v. Brown, supra* at 1085–86:

> There is no purpose to restating here the panoply of reasons which have been assigned by the courts which follow the majority rule. In our view, however, its basic soundness lies in the simple proposition that a parent cannot be said to have been damaged by the birth and rearing of a normal, healthy child . . . it is a matter of universally–shared emotion and sentiment that the intangible but all–important, incalculable but invaluable "benefits" of parenthood far outweigh any of the mere monetary burdens involved. Speaking legally, this may be deemed conclusively presumed by the fact that a prospective parent does not abort or subsequently place the "unwanted" child for adoption. On a more practical level, the validity of the principle may be tested simply by asking any parent the purchase price for that particular youngster. Since this is the rule of experience, it should be, and we therefore hold that it is, the appropriate rule of law.

(Footnotes and citations omitted.)

Another common rationale is that recovery of child–rearing costs would be a windfall to the parents and an unreasonable burden on the negligent health care provider. *See, e.g., White v. United States, supra* at 149; *Kingsbury v. Smith, supra* at 243. The Wisconsin Supreme Court put it this way:

> To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well–being of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real. On the other hand, every financial cost or detriment—what the complaint terms "hard money damages"—including the cost of food, clothing and education, would be shifted to the physician who allegedly failed to timely diagnose the fact of pregnancy. We hold that such result would be wholly out of

proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged.

(Footnote omitted.) *Rieck v. Medical Protective Co., supra* at 518–19.

Still other courts have denied recovery in order to protect the psyche of the child who is the subject of the action:

Another problem is the possible harm that can be caused to the unwanted child who will one day learn that he not only was not wanted by his or her parents, but was reared by funds supplied by another person. Some authors have referred to such a child as an "emotional bastard" in a realistic, but harsh, attempt to describe the stigma that will attach to him once he learns the true circumstances of his upbringing.

*Boone v. Mullendore, supra* at 722. *Accord, Wilbur v. Kerr, supra* at 244.

Other reasons for denying recovery of child–rearing costs include the speculative nature of the damages, *see Sorkin v. Lee, supra* at 181, and the possibility of fraudulent claims. *See Beardsley v. Wierdsma, supra* at 292.

A minority line of authority permits recovery of the costs of rearing and educating a healthy, normal child. However, only Ohio currently permits full recovery. *Bowman v. Davis,* 48 Ohio St. 2d 41, 356 N.E.2d 496 (1976). Other courts allow the parents' damage award to be reduced by the value of the benefits conferred by the parent–child relationship. *Hartke v. McKelway,* 707 F.2d 1544 (D.C. Cir. 1983); *University of Ariz. Health Sciences Ctr. v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Stills v. Gratton,* 55 Cal. App. 3d 698, 127 Cal. Rptr. 652 (1976); *Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984); *Troppi v. Scarf,* 31 Mich. App. 240, 187 N.W.2d 511 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn. 1977). This "benefits" rule is based on the Restatement (Second) of

Torts § 920 (1977).[1]

Courts adopting the "benefits" rule reject the majority rationale that a healthy, normal child is always more benefit than burden. To hold that the birth of a child can never be an injury, they reason, ignores the fact that millions of persons utilize contraceptive devices and methods for the very purpose of avoiding the birth of a child. *See Troppi v. Scarf, supra* at 253; *Sherlock v. Stillwater Clinic, supra* at 175. Moreover, they note, an individual has a constitutional right to use contraceptive devices and methods to limit the size of his or her family. *Griswold v. Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965); *cf. Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). Complete denial of child–rearing costs on the theory that the birth of a healthy, normal child can never be an injury would, therefore, impair the parents' constitutional right to forgo reproduction. *See Ochs v. Borrelli,* 445 A.2d at 885.

Another rationale for allowing recovery of child–rearing costs is the perceived need to apply strictly that rule of tort law which holds a tortfeasor liable for all damages which he caused. *See University of Ariz. Health Sciences Ctr. v. Superior Court, supra* at 585–86. At the same time, however, those courts which have adopted the "benefits" rule have refused to apply the avoidable consequences doctrine, holding that both abortion and adoption are unreasonable means of avoiding or minimizing child–rearing damages, as

---

[1]Section 920 provides:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

Restatement (Second) of Torts (1977). Under this provision, damage to a particular interest may be offset only by benefit to the same interest. Restatement (Second) of Torts § 920, comment *b* (1977). As one court has pointed out, the "benefits" rule is a misapplication of section 920, since it permits the jury to reduce damage to the parents' pecuniary interest, represented by the cost of raising the unwanted child, by the benefit to the parents' nonpecuniary interest, represented by the emotional rewards of parenthood. *Cockrum v. Baumgartner,* 99 Ill. App. 3d 271, 425 N.E.2d 968 (1981), *rev'd,* 95 Ill. 2d 193, 447 N.E.2d 385 (1983).

a matter of law. *See University of Ariz. Health Sciences Ctr. v. Superior Court, supra* at 586 n.5; *Jones v. Malinowski,* 299 Md. at 274; *Troppi v. Scarf, supra* at 260. *But cf. Sorkin v. Lee, supra* at 181–82 (denying child–rearing costs where parents failed to mitigate damages by obtaining abortion).

To recover under the "benefits" rule, the parents of the unplanned child must prove to the jury that the cost of rearing the child outweighs the benefits of parenthood. Critics of the "benefits" rule have expressed concern that the rule will encourage parents to disparage the value of their child. *See Boone v. Mullendore, supra* at 723. The response of courts adopting the "benefits" rule has been that the parents, and not the courts, must weigh the risk that psychological damage to the unplanned child may result if an action is brought alleging his birth as a compensable injury. *See University of Ariz. Health Sciences Ctr. v. Superior Court, supra* at 585.

## III

We find some of the above cited reasons for denying recovery of child–rearing costs unpersuasive. To begin with, we cannot agree that the benefits of parenthood always outweigh the costs of rearing a child. *See Public Health Trust v. Brown, supra.* If such were the case, presumably no sterilization operations would be performed. Second, we do not think that recovery may be denied in order to avoid placing an "unreasonable" burden upon health care providers. *See Rieck v. Medical Protective Co., supra.* It is not our place to deny recovery of certain damages merely in order to insulate health care providers from the shock of big tort judgments. Third, the possibility that some parents might bring fraudulent claims is not a sufficient basis for denying recovery. *See Beardsley v. Wierdsma, supra.* We will not presuppose that courts are so ineffectual and the jury system so imperfect that fraudulent claims cannot be distinguished from the legitimate. *See Freehe v. Freehe,* 81 Wn.2d 183, 189, 500 P.2d 771 (1972).

Nevertheless, we are convinced that recovery of child–rearing costs must be denied on other grounds. We take as a starting point the McKernans' argument that they are entitled to recover the full cost of rearing and educating their unplanned child, without any offset for the benefits of parenthood. *See Bowman v. Davis, supra.* This goes too far. A child is more than an economic liability. A child may provide its parents with love, companionship, a sense of achievement, and a limited form of immortality. Thus, when a parent comes before a court alleging that he or she was damaged by the unplanned birth of a child, the only logical method of determining whether such damage has occurred would be to weigh child–rearing costs against the benefits of parenthood. This, of course, is what the "benefits" rule purports to do.

After careful consideration, however, we have come to the conclusion that the "benefits" rule cannot be applied in this state. Under Washington law, damages may not be recovered unless they are established with reasonable certainty. *Dyal v. Fire Cos. Adj. Bur., Inc.,* 23 Wn.2d 515, 521, 161 P.2d 321 (1945). Uncertainty as to the fact of damage is a ground for denying liability.[2] *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 330 P.2d 1068 (1958). We believe that it is impossible to establish with reasonable certainty whether the birth of a particular healthy, normal child damaged its parents. Perhaps the costs of rearing and educating the child could be determined through use of actuarial tables or similar economic information. But whether these costs are outweighed by the emotional benefits which will be conferred by that child cannot be calculated. The child may turn out to be loving, obedient and attentive, or hostile, unruly and callous. The child may grow up to be President of the United States, or

---

[2] By contrast, once the fact of damage is established, recovery will not be denied merely because the amount of damage cannot be ascertained with mathematical precision, provided the evidence is sufficient to afford a reasonable basis for estimating loss. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.,* 80 Wn.2d 784, 786, 498 P.2d 870 (1972).

to be an infamous criminal. In short, it is impossible to tell, at an early stage in the child's life, whether its parents have sustained a net loss or net gain.

The Delaware Supreme Court, in denying recovery of child–rearing costs, adopted a similar rationale:

> First, as to the legal concept, it is settled Delaware law that recovery may not be had for damages which are speculative or conjectural. And that applies to any attempt to measure the value of a human life against its costs. A child is born—how can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value? We recognize that a few courts, approaching the problem in clinical terms, have applied a "balancing test" which, presumably, permits a jury to say that a life has been weighed and found wanting and thus the parents have been "damaged." We respect the efforts of other Courts to provide a remedy under the circumstances but it seems to us that that kind of judgment, if appropriate at all in an American Court of law, might be applied at the end of a life, after it has been lived and when the facts can be identified. But, in our view, any attempt to apply it at birth can only be an exercise in prophecy, an undertaking not within the speciality of our fact–finders.

(Footnotes and citations omitted.) *Coleman v. Garrison,* 349 A.2d 8, 12 (Del. 1975).

We base our holding that child–rearing costs may not be recovered on yet another ground. Under the "benefits" rule, parents would be obliged to prove their child was more trouble than it was worth. As one court noted:

> an unhandsome, colicky or otherwise "undesirable" child would provide fewer offsetting benefits, and would therefore presumably be worth more monetarily in a "wrongful birth" case. The adoption of that rule would thus engender the unseemly spectacle of parents disparaging the "value" of their children or the degree of their affection for them in open court. It is obvious, whether the conclusion is phrased in terms of "public policy," or otherwise, that such a result cannot be countenanced.

(Citation omitted.) *Public Health Trust v. Brown,* 388 So. 2d 1084, 1086 n.4 (Fla. Dist. Ct. App. 1980).

Moreover, even if the "benefits" rule were not applied, and parents allowed to sue for the full cost of rearing their unplanned child, the simple fact that the parents saw fit to allege their child as a "damage" to them would carry with it the possibility of emotional harm to the child. We are not willing to sweep this ugly possibility under the rug by stating that the parents must be the ones to decide whether to risk the emotional well being of their unplanned child. *See University of Ariz. Health Sciences Ctr. v. Superior Court, supra.* We therefore hold that to permit recovery of child–rearing costs would violate the public policy of this state. In so holding, we adopt the reasoning of the Arkansas Supreme Court:

> We are persuaded for several reasons to follow those courts which have declined to grant damages for the expense of raising a child. It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question; every question cannot be answered in terms of dollars and cents. We are also convinced that the damage to the child will be significant; that being an unwanted or "emotional bastard," who will some day learn that its parents did not want it and, in fact, went to court to force someone else to pay for its raising, will be harmful to that child. It will undermine society's need for a strong and healthy family relationship. We have not become so sophisticated a society to dismiss that emotional trauma as nonsense.

*Wilbur v. Kerr,* 275 Ark. 239, 243–44, 628 S.W.2d 568 (1982).

We have held that child–rearing costs cannot be recovered. This does not mean, however, that health care providers are immunized from all liability resulting from unsuccessful sterilization operations. The McKernans have alleged damages for the expense, pain and suffering, and loss of consortium associated with the failed tubal ligation, pregnancy and childbirth. Dr. Aasheim has conceded in his brief that these damages, if proven, may be recovered. The authorities are in accord. *See* Annot., *Tort Liability for Wrongfully Causing One To Be Born,* 83 A.L.R.3d 15, 29–

30 (1978). We find that these damages may be established with reasonable certainty, and do not invite disparagement of the child involved. Therefore, we agree that they may be recovered if proven.

Affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.