CHRISTINE L. HITZEMANN, APPELLANT, V. GEORGE M. ADAM, M.D., AND MARY LANNING MEMORIAL HOSPITAL, APPELLEES.

518 N.W.2d 102

Filed June 24, 1994.   No. S-92-1013.

Daniel J. Thayer, of Lauritsen, Brownell, Brostrom & Stehlik, for appellant.

Mark E. Novotny, of Kennedy, Holland, DeLacy & Svoboda, for appellee Adam.

Robert W. Wagoner for appellee Mary Lanning Memorial Hospital.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

PER CURIAM.

The plaintiff, Christine L. Hitzemann, filed this action against the defendants, George M. Adam, M.D., and Mary Lanning Memorial Hospital (Hospital), for medical malpractice under the Nebraska Hospital-Medical Liability Act

and for breach of contract. The trial court sustained the defendants' demurrers to the plaintiff's second amended petition and dismissed the plaintiff's cause of action without prejudice. The plaintiff has appealed to this court assigning as error the trial court's sustaining the defendants' demurrers.

When reviewing a ruling on a general demurrer, an appellate court is required to accept as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994).

On May 4, 1991, the plaintiff was admitted to the Hospital complaining of pain in her lower abdomen. At that time, she was seen by Dr. Adam, and after consultation with Dr. Adam, he recommended that the plaintiff undergo a procedure to remove cysts from her ovaries and sterilization, both through a laproscopic surgical procedure. The plaintiff verbally consented to both procedures, the latter to prevent conception. The plaintiff signed a permit authorizing Dr. Adam to perform both procedures.

The operation was performed the next day by Dr. Adam at the Hospital; however, the sterilization procedure was never completed. Subsequent to the surgery, the plaintiff received postoperative information and counseling regarding her sterilization procedure.

Subsequent to the plaintiff's surgery, the plaintiff resumed marital relations with her husband. Approximately 8 weeks after the surgery, the plaintiff's husband was informed by Dr. Adam's office that the sterilization procedure had not been performed.

The plaintiff claimed that as a result of Dr. Adam's and the Hospital's (1) failing to perform the tubal sterilization, (2) counseling of the plaintiff as to the postoperative consequences of the tubal sterilization, and (3) failing to timely inform the plaintiff of the omission to perform the tubal sterilization, the plaintiff and her husband resumed marital relations without the use of birth control procedures.

On July 20, 1991, the plaintiff was informed that she was pregnant. The child was conceived between May 14 and 30,

1991. On February 5, 1992, the plaintiff's son was born as a result of the pregnancy.

For her second cause of action, the plaintiff alleged that she entered into a contract with Dr. Adam and the Hospital whereby the defendants agreed to perform a tubal sterilization. The plaintiff further alleged that the defendants breached the contract by failing to perform the sterilization and that the breach was the cause of the pregnancy and birth of her son.

The plaintiff claimed damages for prenatal and birthing expenses and sought child-rearing expenses up to and beyond her son's age of majority. The plaintiff also claimed physical pain and suffering, mental and emotional pain and suffering, loss of consortium, and loss of wages.

In her second amended petition, the plaintiff alleged the defendants were qualified as health care providers under the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2801 et seq. (Reissue 1988 & Cum. Supp. 1990). She affirmatively waived her right to a medical review panel pursuant to § 44-2840(4).

Section 44-2821 provides in part:

(2) If a health care provider shall qualify under the Nebraska Hospital-Medical Liability Act, the patient's exclusive remedy against the health care provider or his or her partner, employer, or employees for alleged malpractice, professional negligence, failure to provide care, breach of contract relating to providing medical care, or other claim based upon failure to obtain informed consent for an operation or treatment shall be as provided by the Nebraska Hospital-Medical Liability Act unless the patient shall have elected not to come under the provisions of such act. Unless the patient or his or her representative shall have (a) elected not to be bound by the terms of the Nebraska Hospital-Medical Liability Act, (b) filed such election with the director in advance of any treatment, act, or omission upon which any claim or cause of action is based, and (c) notified the health care provider of election as soon as is reasonable under the circumstances that such patient has so elected, it shall be conclusively presumed that the patient has elected to be bound by the terms and

provisions of the Nebraska Hospital-Medical Liability Act.

The plaintiff did not allege an election on her part not to be bound by the provisions of the act. Accordingly, the provisions of the act provide the plaintiff's exclusive remedy against the defendants.

A cause of action arising while a patient and health care provider are subject to the Nebraska Hospital-Medical Liability Act is to be adjudicated in accordance with the provisions of the act. *Barry v. Bohi*, 221 Neb. 651, 380 N.W.2d 249 (1986).

Malpractice or professional negligence is defined under the Nebraska Hospital-Medical Liability Act as follows:

> Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.

§ 44-2810.

The plaintiff has failed to allege in her petition that the defendants, in rendering professional services, failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by health care providers practicing in Adams County or similar communities. The trial court correctly sustained the defendants' demurrers as to the plaintiff's first cause of action for medical malpractice.

The plaintiff's second cause of action was for breach of contract by the defendants.

Breach of contract actions are restricted by the Nebraska Hospital-Medical Liability Act. Section 44-2818 states in part:

> No liability shall be imposed upon any health care provider on the basis of an alleged breach of an express or

implied contract assuring results to be obtained from any procedure undertaken in the course of health care, unless such contract is expressly set forth in writing and is signed by such health care provider or by an authorized agent of such health care provider.

The plaintiff's second amended petition does not allege a contract expressly set forth in writing, signed by the defendants or their authorized agents regarding an express or implied contract assuring the results to be obtained from the procedures undertaken by Dr. Adam in the health care of the plaintiff. The only allegation concerning a written document of any kind refers to the permit signed by the plaintiff authorizing the sterilization procedure.

The trial court correctly sustained the defendants' demurrer as to the plaintiff's second cause of action as well.

When a demurrer to a petition is sustained, the trial court must grant the plaintiff leave to amend the petition unless it is clear that no reasonable possibility exists that by repleading the plaintiff will be able to correct the defective petition. After the demurrer has been sustained, but where there is a reasonable possibility that the defective petition may be cured by amendment, denying the plaintiff the opportunity to replead is an abuse of discretion. *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993). See, also, *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994).

Although the trial court correctly sustained the defendants' demurrers to the plaintiff's second amended petition, the trial court erred in dismissing the plaintiff's second amended petition without leave to amend, because it may be possible for the plaintiff to state a cause of action for medical malpractice against the defendants in an amended petition.

A question has been raised by the parties' briefs concerning the appropriate measure of damages in a cause of action for medical malpractice where a healthy, normal child is born after an unsuccessful sterilization operation. Courts from many jurisdictions have dealt with this issue, and the majority of jurisdictions have held that parents of a healthy, normal child born after an unsuccessful sterilization operation may not

recover child-rearing costs, but may recover damages for such child for prenatal and delivery medical expenses; for emotional distress, loss of wages, pain and suffering, and loss of consortium caused by the failed sterilization, pregnancy, and childbirth; and for any costs associated with a second corrective sterilization procedure. *Girdley v. Coats*, 825 S.W.2d 295 (Mo. 1992); *McKernan v. Aasheim*, 102 Wash. 2d 411, 687 P.2d 850 (1984).

There are a variety of reasons for denying recovery of child-rearing costs for a normal child born as the result of medical malpractice. The Washington Supreme Court summarized these reasons in *McKernan v. Aasheim, supra*. It stated:

> Many hold that the benefits of joy, companionship, and affection which a healthy child can provide outweigh the costs of rearing that child. . . .
>
> Another common rationale is that recovery of child-rearing costs would be a windfall to the parents and an unreasonable burden on the negligent health care provider. . . .
>
> Still other courts have denied recovery in order to protect the psyche of the child who is the subject of the action . . . .
>
> Other reasons for denying recovery of child-rearing costs include the speculative nature of the damages . . . and the possibility of fraudulent claims.

*Id.* at 414-16, 687 P.2d at 852-53.

Damages which are uncertain, speculative, or conjectural cannot be a basis for recovery. *Karpf v. Karpf*, 240 Neb. 302, 481 N.W.2d 891 (1992). "The costs of child rearing—and especially education—are necessarily speculative." *Girdley v. Coats*, 825 S.W.2d at 298.

Because of the speculative nature of the damages, the cost of rearing a healthy, normal child born as the result of medical malpractice cannot be recovered. However, damages for such child for prenatal and delivery medical expenses; for emotional distress, loss of wages, pain and suffering, and loss of consortium caused by the failed sterilization, pregnancy, and childbirth; and for any costs associated with a second corrective

sterilization procedure, if proven, may be recovered.

The trial court's judgment dismissing the plaintiff's second amended petition without leave to amend is reversed, and the cause is remanded to the trial court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

BOSLAUGH, J., participating on briefs.