# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEVEN A. SIPPLE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N17C-11-290 VLM |
| | ) | |
| v. | ) | |
| | ) | |
| CONNECTIONS COMMUNITY | ) | |
| SUPPORT PROGRAMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted: May 11, 2018
Decided: August 15, 2018

*Upon Consideration of Defendant's Motion to Dismiss,* **GRANTED.**

Bruce L. Hudson, Esquire, of Hudson & Castle, LLC, of Wilmington, Delaware. *Attorney for Plaintiff.*

John D. Balaguer, Esquire, and Randall S. MacTough of White & Williams LLP, of Wilmington, Delaware. *Attorneys for Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Former inmate Steven A. Sipple ("Plaintiff") brings a new claim for breach of contract that mirrors an earlier filed claim for medical negligence against Defendant Connections Community Support Programs, Inc. ("Defendant") for personal injuries he claims he sustained while incarcerated at the Department of Correction ("DOC"). Defendant seeks dismissal of the contract claim under Superior Court Civil Rule 12(b)(6) for failure to state a claim. Plaintiff maintains that because he is a third-party beneficiary of a contract between DOC and Defendant, he is entitled to proceed under both contract and medical negligence theories of liability. After consideration of the parties' briefings and oral arguments, for the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff first filed his medical negligence tort claim on May 10, 2017 ("Tort Action").[1] The Tort Action concerns the medical treatment that Plaintiff received while incarcerated from June 19, 2015 to April 18, 2017 at the James T. Vaughn Correctional Center ("JTVCC").[2] The Complaint alleges that Plaintiff exhibited symptoms consistent with colorectal cancer while incarcerated and that Defendant

---

[1] Compl., Trans. I.D. 60583812, N17C-05-157 VLM ("Tort Action").

[2] Am. Compl. Trans. I.D. 60589804, Tort Action at ¶¶ 8, 36.

failed to provide necessary and timely care to adequately treat and diagnose his condition, thereby breaching the standard of care.[3] Plaintiff claims that Defendant breached the standards established by many organizations, including the National Commission on Correctional Health Care ("NCCHC"), the American Correctional Association ("ACA"), and the DOC's Bureau of Correctional Healthcare Services.[4] Approximately three months after he filed his Tort Action, Plaintiff filed a Motion to Submit Second Amended Complaint, seeking to add a claim for breach of contract to his existing Tort Action.[5]

Defendant opposed Plaintiff's request to amend the Tort Action to include a claim for breach of contract and filed a response brief on September 6, 2017.[6] Oral arguments for the request to amend were heard on October 3, 2017. On November 17, 2017, the Court addressed issues regarding Plaintiff's application to bring both contract and medical negligence claims under one lawsuit where they appeared to be based on the same alleged conduct by Defendant.[7] Given the concerns raised by the Court, coupled with Plaintiff's concession that his request to proceed on both

---

[3] *Id.* at ¶¶ 48–54.

[4] *Id.* at ¶ 51.

[5] Pl.'s Mot. to Submit Second Am. Compl., Trans. I.D. 61040536 in Tort Action.

[6] Def.'s Resp. to Pl.'s Mot. to Submit Second Am. Compl., Trans. I.D. 61075982 in Tort Action.

[7] Follow-up Ltr. from Court, Trans. I.D. 61381429 in Tort Action.

claims was one of first impression, the parties elected to more fully brief the issues. However, in a letter dated November 21, 2017, Plaintiff notified the Court of his intent to instead file a separate contract claim and withdrew his application to amend the Tort Action.[8] Plaintiff then filed a separate Complaint alleging breach of contract against Defendant on November 30, 2017 ("Contract Action").[9]

The Contract Action alleges that Defendant was responsible for providing health care services to all inmates at JTVCC, including Plaintiff, through a contract with DOC.[10] This responsibility stems from a March 6, 2014 Contract ("Contract") between DOC and Defendant to which Plaintiff alleges he is an intended third-party beneficiary.[11] Plaintiff's claim highlights certain clauses in the Contract between Defendant and DOC, as well as other documents incorporated by reference as material terms and promises.[12] Plaintiff alleges that Defendant failed to perform its duties and obligations under the Contract and that Plaintiff was injured as a direct

---

[8] Ltr. re: Pl.'s Breach of Contract Claim, Trans. I.D. 61387028 in Tort Action.

[9] Compl. for Breach of Contract, Trans. I.D. 61410529, N17C-11-290 VLM ("Contract Action").

[10] *Id.* at ¶¶ 6, 48.

[11] *Id.* at ¶¶ 48–50; Health Care Services Contract (hereinafter the "Contract"), Compl. for Breach of Contract, Contract Action at Ex. C.

[12] Compl. for Breach of Contract, Contract Action at ¶¶ 50–58. Other documents incorporated by reference include Defendant's Response to the Request for Proposals ("RFPs") executed during the bidding process between DOC and Defendant. *See id.* at ¶¶ 56, 58.

4

and proximate result of certain alleged contractual breaches.[13] Among the material terms is adherence to the standards established by the NCCHC, the AHA, and the DOC's Bureau of Correctional Healthcare Services,[14] the same organizational standards previously identified in the Tort Action.

On March 8, 2018, just as it had opposed Plaintiff's request to amend the Tort Action, Defendant filed this Motion to Dismiss the separate Contract Action. Plaintiff filed a Response and Brief in Opposition on March 22, 2018, and Defendant filed a Reply on March 28, 2018. Oral arguments were heard on May 11, 2018. Having considered all submissions and the arguments of counsel, the matter is ripe for review.

### *Contentions of the Parties*

Defendant argues that where Plaintiff claims he suffered personal injuries related to the provision of health care services during his incarceration, the Medical Negligence Act controls and precludes his separate contract claim.[15] Defendant argues dismissal under Rule 12(b)(6) is warranted because under the Medical Negligence Act, contract claims are only viable if there is a promise of specific care

---

[13] *Id.* at ¶¶ 60–61.

[14] *Id.* at ¶ 57.

[15] Def.'s Opening Br. at 8–9.

or result made by the healthcare provider.[16] Where no such evidence exists in this case, Defendant argues Plaintiff fails to establish a separate contract claim under the Medical Negligence Act. Defendant further asserts that Plaintiff's Contract Action would also not be cognizable under common law, regardless of the Medical Negligence Act, where Plaintiff has not alleged independent duties in his breach of contract claims that are distinct and separate from his already existing medical negligence claims.[17] Lastly, Defendant argues that to allow the Contract Action to proceed in this context threatens to dramatically expand the scope of Delaware's medical negligence scheme and warns of the dangers of such an expansion.[18]

Plaintiff counters that as an intended third-party beneficiary of the Contract between DOC and Defendant, he is entitled to sue for breach of contract under Delaware law.[19] Claiming further that contract claims, in general, are expressly authorized by the Medical Negligence Act,[20] he argues that the tort and contract claims could establish separate legal theories, do not contain identical facts, and may

---

[16] *Id.* at 9–16.

[17] *Id.* at 16–17.

[18] *Id.* at 17–19.

[19] Pl.'s Resp. at 2–3.

[20] *Id.* at 3–4.

6

entitle him to assert a stronger claim for punitive damages.[21]    Finally, Plaintiff perseverates—contrary to this Court's prior concerns—in seeking both tort and contract claims be tried before one jury.[22]

## STANDARD OF REVIEW

For purposes of a motion to dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[23] Even vague allegations are considered well-pleaded if they give the opposing party notice of a claim.[24] The Court must draw all reasonable inferences in favor of the non-moving party;[25] however, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[26] Dismissal of a complaint under Rule 12(b)(6) must be denied if the plaintiff could recover under "any reasonably conceivable set of circumstances susceptible of proof under the complaint."[27]

---

[21] *Id.* at 4–9.

[22] *Id.* at 9–10.

[23] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[24] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[25] *Id.*

[26] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (internal citation omitted).

[27] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952)).

7

However, dismissal may be granted if it appears to a certainty that under no set of facts which could be proved to support the claim asserted would the plaintiff be entitled to relief.[28]

## DISCUSSION

Plaintiff does not argue that his breach of contract claim falls outside the purview of the Medical Negligence Act.[29] He further concedes that his attempt to bring this contract claim is one of first impression in Delaware. Unable to find any Delaware authority in support of proceeding with parallel claims in tort and contract, Plaintiff instead relies upon other jurisdictions that have generally accepted that inmates, as intended third-party beneficiaries, could pursue contract claims based on certain contracts between outside contractors and departmental correction agencies.[30]

The cases cited by Plaintiff, with the exception of *Ogunde v. Prison Health Services, Inc.*,[31] are distinguishable from the case at bar, as none implicate any

---

[28] *Klein*, 94 A.2d at 391 (Del. 1952).

[29] 18 *Del. C.* § 6801 *et seq.*

[30] Pl.'s Resp. at 2 (citing *Miller v. Corrections Corp. of America Central Arizona*, 239 Fed. Appx. 396 (9th Cir. 2007); *Cherry v. Crow*, 845 F. Supp. 1520 (M.D. Fl. 1994); *Rathke v. Corrections Corp. of America*, 153 P.3d 303 (Alaska 2007); *Ogunde v. Prison Health Services, Inc.*, 645 S.E.2d 520 (Va. 2007)).

[31] 645 S.E.2d 520 (Va. 2007).

8

medical negligence or medical malpractice schemes.[32] Although Plaintiff could not provide additional procedural information regarding *Ogunde*, the Supreme Court of Virginia appeared to allow an inmate to proceed with simultaneous claims for breach of contract and medical negligence predicated upon the same conduct.[33] At the very least, *Ogunde* suggests that there existed a cognizable claim to withstand a motion to dismiss and allow for discovery,[34] absent some other bar. Assuming, for purposes of this motion, that Plaintiff may be considered an intended third-party beneficiary to this Contract, Delaware's medical negligence scheme differs from that of Virginia in *Ogunde*.[35] In other words, Defendant must address his claim under Delaware's medical negligence statutory framework.

---

[32] *See Miller*, 239 Fed. Appx. at 396–97 (holding that an inmate had a viable breach of contract claim against state corrections contractor in light of the holding in *Rathke*); *Cherry*, 845 F. Supp. at 1523 (denying motion to dismiss breach of contract in in suit brought by inmate against a state corrections contractor, where there was an existing general negligence claim); *Rathke*, 153 P.3d at 311 (holding that an inmate had third party beneficiary status under a contract between the state and a corrections contractor because of a Final Settlement Agreement in a class action by Alaska state prisoners challenging conditions in state prisons).

[33] *Ogunde v. Prison Health Services, Inc.*, 645 S.E.2d 520, 523 (Va. 2007).

[34] *Id.* at 523–27 (the Supreme Court of Virginia found that the trial court had erred in dismissing plaintiff's claims for medical malpractice and breach of contract).

[35] *See* Va. Code Ann. §§ 8.01-581.1 *et seq.*

*The Medical Negligence Act*

Medical negligence is defined under the Act as "any tort *or* breach of contract based on health care or professional services rendered, or which should have been rendered, by a health-care provider to a patient."[36] The crux of Plaintiff's Tort Action relates to the provision of medical care and alleged insufficiencies of that care. The Tort Action's Amended Complaint contains three counts: medical negligence, vicarious liability of Defendant, and corporate negligence.[37] Plaintiff's prayer for relief under the medical negligence count includes the request for punitive damages.[38] Plaintiff alleges that Defendant's employees and agents "were negligent and violated the applicable standard of care."[39] Specifically, Defendant "violated the applicable community medical standards and standards set" by several different organizations, including the DOC Bureau of Correctional Health Care Services, the NCCHC, and the ACA.[40]

---

[36] 18 *Del. C.* § 6801(7) (emphasis added). A "health-care provider" is further defined as "a person, corporation, facility or institution licensed by this State . . . to provide health-care or professional services or any officers, employees or agents thereof acting within the scope of their employment. . . ." 18 *Del. C.* § 6801(5).

[37] Am. Compl. in Tort Action.

[38] *Id.* at ¶ 54.

[39] *Id.* at ¶ 49.

[40] *Id.* at ¶ 51.

Similar claims are found in the Contract Action. That Complaint contains only two counts: the first for breach of contract and the second also for punitive damages.[41] For the breach of contract claim, Plaintiff alleges that he "suffered injuries and damages as the direct and proximate result of Defendant's breach of the Contract by its failure to perform duties and obligations and *meet standards intended to safeguard offenders' medical well-being which include the following . . . .*"[42] Plaintiff then lists several standards or policies, including the same DOC policies, Covenants from Defendant's Proposal in Response to DOC's Request for Proposals, and the ACA and NCCHC standards.[43] Plaintiff does not allege that any promises for a specific result were made to him while incarcerated. Instead, he alleges that the promises to provide specific services were made to DOC by Defendant, and that Defendant breached the contract to provide such services to the detriment of Plaintiff.

Plaintiff is correct that the Medical Negligence Act, by its own terms, allows for contract claims generally. The Act's definition section clearly contemplates such claims.[44] But the pertinent questions here concern what is required to bring a

---

[41] Compl. in Contract Action.

[42] *Id.* at ¶ 60 (emphasis added).

[43] *Id.* at ¶¶ 60(a)–(d). The Covenants include adherence to multiple sets of standards set by several organizations, including the NCCHC, the AHA, and the DOC. *See id.* at ¶ 60(b)(xiv).

[44] 18 *Del. C.* §§ 6801(7), (9).

11

contract claim under the Medical Negligence Act and whether such a claim can simultaneously exist with a medical negligence tort claim. Relevant to this ruling, the Court looks to portions of the Medical Negligence Act that speak to breaches of contract.

Two sections of Chapter 68 mention a "breach of contract," including the aforementioned definition section. The other is 18 *Del. C.* § 6851. That Section states:

> No liability shall be imposed upon any health-care provider on the basis of an alleged breach of contract, express or implied, assuring results to be obtained from undertaking or not undertaking any diagnostic or therapeutic procedure in the course of health care, unless such contract is set forth in writing and signed by such health-care provider or by an authorized agent of such health-care provider.[45]

Defendant asserts that 18 *Del. C.* § 6851 codified common law provisions that recognized breach of contract claims in the medical care context only where the healthcare professional promises a specific result.[46] In Delaware, prior case law

---

[45] 18 *Del. C.* § 6851.

[46] Def.'s Opening Br. at 10–11 (citing *McKinney v. Nash*, 120 Cal. App. 3d 428, 442 (Cal. Ct. App. 1981); *Nadaf-Rahrov v. Regents of the Univ. of Cal.*, 2015 Cal. Super. LEXIS 11962, at *1–2 (Cal. Super. Ct. Nov. 6, 2015); *Coleman v. Garrison*, 349 A.2d 8, 11 (Del. 1975); *Scarzella v. Saxon*, 436 A.2d 358, 361 (D.C. 1981); 43 A.L.R.3d 1221; 61 Am. Jur.2d Physicians, Surgeons, and Other Healers § 135). *See also Heneberry v. Pharoan*, 158 A.3d 1087, 1097 (Md. Ct. Spec. App. 2017).

predating the Medical Negligence Act additionally held that such a warranty or guarantee had to be supported by consideration.[47]

In 1993, the District Court of Delaware was asked to interpret the breadth of 18 *Del C.* § 6851 in the context of an implied contract. In *Miller v. Spicer*,[48] the District Court held that claims for breaches of an implied contract are not cognizable under the Medical Negligence Act.[49] Although that is not the specific question here, that ruling is instructive regarding the interpretation of § 6851. The District Court interpreted 18 *Del C.* § 6851 as "negat[ing] a breach of contract claim in the absence of a written contract only where a health care provider guarantees that a particular result will be obtained through medical care."[50] The District Court found that "[t]he statutory language specifically requires any limitation of liability to concern a contract for services 'assuring results to be obtained.'"[51] Then, in concluding its analysis of 18 *Del C.* § 6851, the District Court found that,

> Chapter 68 purports to regulate malpractice actions based on breach of contract; it specifically permits a breach of contract action where the contract was one assuring results to be obtained so long as that contract

---

[47] *See Coleman*, 349 A.2d at 11 (overruled in part on other grounds in *Garrison by Garrison v. Med. Ctr. of Del. Inc.*, 571 A.2d 786, 1989 WL 160433 (Del. Dec. 12, 1989) (TABLE)).

[48] *Miller v. Spicer*, 822 F. Supp. 158 (D. Del. 1993).

[49] *Id.* at 173.

[50] *Id.* at 172.

[51] *Id.* (quoting 18 *Del C.* § 6851).

was in writing; *it does not specifically address whether a breach of contract claim may be brought in other situations.*[52]

Thus, the District Court employed basic tenants of statutory construction to discern whether a claim for breach of an implied contract was cognizable under the Medical Negligence Act, and held it was not. Here, this Court determines also that Plaintiff's breach of contract claim is not cognizable under the Medical Negligence Act.

Persuasive to its argument, Defendant cites to the Supreme Court of Nebraska decision in *Hitzemann v. Adam*[53] to assert that similar to 18 *Del C.* § 6851, Plaintiff may only allege a breach of contract that assures a certain result or outcome.[54] The medical negligence scheme in Nebraska contains an almost identical passage to 18 *Del. C.* § 6851.[55] In *Hitzemann*, the plaintiff was to undergo both a procedure to

---

[52] *Id.* (emphasis added).

[53] 518 N.W.2d 102 (Neb. 1994).

[54] Def.'s Op. Br. at 11–12.

[55] Section 44-2818 of Nebraska's Hospital Medical Liability Act states:

> No liability shall be imposed upon any health care provider on the basis of an alleged breach of an express or implied contract assuring results to be obtained from any procedure undertaken in the course of health care, unless such contract is expressly set forth in writing and is signed by such health care provider or by an authorized agent of such health care provider. Nothing in this section shall exempt any health care provider from the standard of care in administering any procedure undertaken. Neb. Rev. Stat. § 44-2818.

This statute contains none of the commas present in 18 *Del. C.* § 6851 but is otherwise almost identical. Section 44-2818 also contains an additional sentence concerning how this section does not otherwise exempt providers from the standard of care.

14

remove ovarian cysts and then sterilization through tubal ligation.[56] The plaintiff sued her physician and hospital for both medical negligence and for breach of contract after the doctor failed to perform the agreed upon sterilization procedure, and the plaintiff subsequently became pregnant.[57]

The Supreme Court of Nebraska found that contract claims were restricted by the terms of § 44-2818 of the Hospital Medical Liability Act. That Supreme Court held the trial court properly found that the plaintiff could not sustain her breach of contract claim because she "d[id] not allege a contract expressly set forth in writing, signed by the defendants or their authorized agents regarding an express or implied contract *assuring the results to be obtained* from the procedures undertaken by [defendant doctor] in the health care of plaintiff."[58] The Supreme Court thus interpreted § 44-2818 as delineating the requirements for the exclusive type of breach of contract claim allowed in this area.

This Court is guided by the *Hitzemann* decision and the Supreme Court of Nebraska's interpretation of an almost identical statute to determine the scope of 18 *Del C.* § 6851 in the context of a contract claim. In doing so, it seems proper to also

---

[56] *Hitzemann*, 518 N.W.2d at 203.

[57] *Id.* at 203–204.

[58] *Id.* at 206 (emphasis added). In other words, the plaintiff was unable to sustain a breach of contract claim in the medical negligence realm because her claim failed to meet the requirements of § 44-2818.

15

consider this section fully in conjunction with the rest of Chapter 68 of Title 18. In Chapter 68, it is clear that the Medical Negligence Act was enacted with the purpose of limiting the number of medical malpractice claims and the size of judgments, thereby lowering the cost of medical malpractice insurance for healthcare providers in this state. The preamble to Chapter 68 states:

> WHEREAS, the number of suits and claims for damages both in Delaware and throughout the Nation as well as the necessary costs of defense and the size of judgments and settlements thereon, arising from professional patient care have increased tremendously in the past several years; and
>
> WHEREAS, there has been a tremendous increase in the cost of liability insurance coverage for health care providers in Delaware, and in some instances the withdrawal of liability insurance companies from the business of insuring health care providers in Delaware, endangering the ability of the citizens of Delaware to continue to receive quality health care as well as adequate and just compensation for negligent injuries; and
>
> WHEREAS, the General Assembly determines it is necessary to make certain major modifications to its current legal system as it relates to health care malpractice claims if the citizens of Delaware are to continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort or breach of contract on the part of a health care provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability, under a strictly construed fault principle as now, at a cost which is not prohibitive and does not lead to the problems and practices described

16

above, while still maintaining Delaware's overall legal system as to health care malpractice claims except as modified by this legislation.[59]

The purpose of the Medical Negligence Act was clearly to limit or otherwise curtail—not expand—the ability of a patient to recover damages against healthcare providers. In doing so, it takes into account the possibility that a claim may be made in tort or contract, with 18 *Del C.* § 6851 as prescribing the requirements by which a separate contract action may be pursued. It is illogical to suggest that the Act, meant to curtail the liability of a healthcare provider, would now permit Plaintiff—in the absence of any express language to do so—to pursue a contract claim not previously cognizable at common law.

Even outside of the medical negligence realm, Delaware courts have generally held that "[f]or both a breach-of contract claim and a tort claim to coexist in a single action, 'the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract.'"[60] Delaware law does not permit "a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by

---

[59] 60 Del.Laws 373 (1975).

[60] *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *3 (Del. Super. Ct. Mar. 13, 2017) (quoting *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007) (citation omitted)).

17

intoning the *prima facie* elements of the tort while telling the story of defendant's failure to perform under the contract."[61]

Here, the Court allowed Plaintiff to pursue his separate breach of contract claim where he proposed that the contract claim would plead different claims and damages.[62] Yet, Plaintiff concedes that his claim against Defendant is based on allegations of failure to meet the standards of medical care, as provided in the Contract, while incarcerated. These are the same allegations of breaches in the standard of care already pled in his Tort Action. Thus, the language of the Contract Action substantially mirrors that of the Tort Action, and the allegations of wrongdoing, in both tort and contract are identical in nature—that the lack of medical care, and the failure to meet the standards of said care, caused Plaintiff's injuries.

Also, Plaintiff's Contract Action alleges only general breaches of contract occurred between DOC and Defendant. The Contract Action does not allege that Defendant made promises of any specific medical care nor that Defendant made any promises or assurances that any healthcare treatment would yield a specific result. There is no claim that any promises or results to Plaintiff were memorialized in

---

[61] *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012) (citations omitted).

[62] Pl.'s Resp. at 5–8.

18

writing. Again, Plaintiff's breach of contract claim is predicated upon the failure to provide medical care to the same *standards* as constitute the standard of care in Plaintiff's medical negligence claim. Nothing different is claimed in the Contract Action that would be presented to a jury that would not be presented through his Tort Action.

Also, Plaintiff's request for punitive damages is identical to the one he claims in the Tort Action.[63] Punitive damages on a breach of contract claim are only available if there is bad faith rising to the level of an independent tort.[64] Here, Plaintiff concedes that the tortious conduct (i.e., the medical care rendered) forms the basis of the contract claim. Thus, even if the Medical Negligence Act did not apply, under common law principles, there is no independent conduct that Plaintiff relies upon to argue for a separate and distinct award for punitive damages based on breach of contract.

Plaintiff's argument that he may be able, through discovery, to pursue the possibility of punitive damages as a result of the same tortious conduct to support

---

[63] The Court notes that contrary to Plaintiff's assertions, he has already requested an award of punitive damages on all claims in the Tort Action. Am. Compl. Trans. I.D. 60589804, Tort Action at ¶¶ 54, 56, 64 [sic].

[64] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996); *Ripsom v. Blacktop, Inc.*, 1988 WL 32071, at *17 (Del. Super. Ct. Apr. 6, 1988) (citing *Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1015 (D. Del. 1985); *Smith v. New Castle County Vo-Tech Sch. Dist.*, 574 F. Supp. 813, 826 (D. Del. 1983); *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co.*, 484 F. Supp. 1375, 1387 (D. Del. 1980)).

19

his Contract Action lacks merit. This is especially so where he has already pled punitive damages in his Tort Action. Where the breach of contract claim, at its root, is duplicative of Plaintiff's existing medical negligence claim, his attempt to seek punitive damages is also redundant. Therefore, this Court finds that Plaintiff has not alleged independent claims or damages in this Contract Action, nor established the requirements to support his Contract Action under the Medical Negligence Act.

Finally, it bears repeating that this Court raised concerns when Plaintiff first tried to amend his Tort Action to include the breach of contract claim. Although he maintains that both the tort and contract claims should be presented to one jury, to interject what may be admissible in a breach of contract case into structured constraints set by the legislature under 18 *Del C.* § 6853 is akin to forcing a square peg into a round hole. Had the contract claim been statutorily permitted under the Medical Negligence Act, then the jury could have reconciled the duties of care owed under different theories of liability and properly weighed the evidence as to causation and damages as to each claim. For the reasons previously stated, the contract claim cannot be brought under the Medical Negligence Act.

Moreover, bringing these claims simultaneously is not the greater of the two evils. Rather, permitting the Contract Action to proceed independently is more problematic where Plaintiff's contract claims, based on identical allegations of wrongful conduct by Defendant, circumvents key portions of the Medical

20

Negligence Act, including the expert requirements under 18 *Del. C.* §§ 6853 and 6854. Section 6853(a)(1) mandates that a plaintiff may not file an action for medical negligence unless plaintiff provides an affidavit of merit in which an expert signs and verifies that "there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant."[65] Section 6853(e) dictates that except in a few very narrow, specified circumstances, a plaintiff cannot prevail in a medical negligence action unless there is expert testimony concerning both standard of care and causation.[66] Section 6854 further delineates the requirements for experts who are able to testify.[67] Allowing Plaintiff to proceed with his separate contract action means he effectively bypasses the safeguards found in 18 *Del. C.* §§ 6853 and 6854. This approach would allow future claims to be brought without first

---

[65] 18 *Del. C.* § 6853(a)(1).

[66] 18 *Del. C.* § 6853. Section 6853(e) states:
> No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death except that such expert medical testimony shall not be required if a malpractice review panel has found negligence to have occurred and to have caused the alleged personal injury or death and the opinion of such panel is admitted into evidence . . . .

[67] 18 *Del. C.* § 6854. Section 6854 states: "No person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify."

meeting the fundamental requirements found in medical negligence actions as set forth by the Delaware legislature.

Following the spirit of the legislative intent of Title 18, Chapter 68, and the language of 18 *Del C.* § 6851, which requires Plaintiff to establish that he contracted with Defendant for a specific result or outcome, this Court finds that Plaintiff fails to state a contract claim under Rule 12(b)(6) as it does not comport with the Medical Negligence Act. Even in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff, there are no reasonably conceivable set of facts which would entitle Plaintiff to relief under the Complaint. As Plaintiff has not otherwise made any allegations that he contracted with Defendant for a specific result or outcome—nor can he under the alleged facts—his breach of contract claim must be dismissed. Albeit through a separate filing, the Court remains reluctant to open this Pandora's box in the area of medical negligence where a tort claim against a healthcare provider is restyled under the guise of a contract.

**CONCLUSION**

Under Rule 12(b)(6), Plaintiff's breach of contract claim is dismissed for failure to state a claim. For the foregoing reasons, Defendant's Motion to Dismiss

22

is **GRANTED**. This ruling has no bearing on Plaintiff's existing Tort Action.[68]

      **IT IS SO ORDERED.**

                                      Judge Vivian L. Medinilla

oc:    Prothonotary

cc:    All Counsel on Record (via e-filing)

---

[68] Am. Compl. Trans. I.D. 60589804, Tort Action.

23